**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)  CHRIS CARDONI, an individual, | ) | |
| (2)  WESLEY WEBB, an individual, | ) | |
| (3)  TERRY BLAIN, an individual, | ) | |
| (4)  BILLY SHAFFER, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 14-CV-0319-CVE-PJC |
| | ) | |
| (1)  PROSPERITY BANK, a  Texas Financial | ) | |
| Institution, | ) | |
| (2)  ERIC DAVIS, an individual, | ) | |
| (3)  ANTHONY DAVIS, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANT PROSPERITY**
**BANK'S MOTION TO TRANSFER VENUE**

George S. Corbyn, Jr., OBA No. 1910
Joe M. Hampton, OBA No. 11851
Amy J. Pierce, OBA No. 17980
CORBYN HAMPTON, PLLC
211 North Robinson, Suite 1910
Oklahoma City, Oklahoma  73102
Telephone:     (405) 239-7055
Facsimile:     (405) 702-4348
gcorbyn@corbynhampton.com
jhampton@corbynhampton.com
apierce@corbynhampton.com

**ATTORNEYS FOR PLAINTIFFS**
**CHRIS CARDONI, WESLEY WEBB,**
**TERRY BLAIN and BILLY SHAFFER**

June 25, 2014

## <u>TABLE OF CONTENTS</u>

**Page(s)**

Table of Contents ......................................................................................................i

Index of Authorities ..................................................................................................ii

I.    PRELIMINARY STATEMENT ....................................................................1

II.   STATEMENT OF FACTS ..............................................................................3

III.  ARGUMENT AND AUTHORITIES.............................................................11

     A.    ATLANTIC MARINE DOES NOT APPLY BECAUSE NO VALID FORUM SELECTION
          CLAUSE EXISTS. ....................................................................................11

     B.    THE SUBJECT FORUM SELCTION CLAUSE IS NOT VALID BECAUSE IT WAS INDUCED
          BY FRAUD AND COERCION, IS OVERREACHING AND VIOLATES OKLAHOMA PUBLIC
          POLICY. .................................................................................................12

          1.    The Forum Selection Clause in the Agreements Was the Product of Fraud.
               .................................................................................................13

          2.    The Subject Forum Selection Clause is Overreaching. ...............................16

          3.    The Subject Forum Selection Clause Violates Oklahoma Public Policy. ....17

     C.    SECTION 1404 ANALYSIS SUPPORTS DENIAL OF THE MOTION TO TRANSFER VENUE.
          .............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*11500 LLC v. Cummings,*
2008 WL 4681371 (W.D. Mo., Oct. 22, 2008) ..................................................... 15

*Adams v. Bay, Ltd.,*
2002 OK CIV APP 117, 60 P.3d 509 .................................................................... 16

*Arr-Maz Products, L.P. v. Shilling Const. Co., Inc.,*
2012 WL 5251191 (N.D. Okla., Oct. 24, 2012)..................................................... 14

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.,*
134 S.Ct. 568 (2013) ..................................................................................... 11, 12

*Beilfuss v. Huffy Corp.,*
685 N.W.2d 373 (Wis. Ct. App. 2004)................................................................. 19

*Chrysler Credit Corp. v. Country Chrysler, Inc.,*
928 F.2d 1509 (10th Cir. 1991)........................................................................... 21

*Cont'l Grain Co. Barge FBL-585*
364 U.S. 19 (1960) .............................................................................................. 20

*Cottonwood Natural Resources, Ltd. v. Circle Star Energy Corp.,*
2012 WL 3839536 (N.D. Okla., Sept. 5, 2012)................................................ 22, 23

*DeSantis v. Wackenhut Corp.,*
793 S.W.2d 670 (Tex. 1990) ......................................................................22, 23, 24

*Eads v. Woodmen of the World Life Insurance Society,*
1989 OK CIV APP 19, 785 P.2d 328 ..........................................................16, 17, 19

*Employers Mut. Cas. Co. v. Bartile Roofs,*
618 F.3d 1153 (10th Cir. 2010) ........................................................................... 21

*First Nat. Bank in Durant v. Honey Creek Entertainment Corp.,*
2002 OK 11, 54 P.3d 100 .................................................................................... 13

*Hoffman v. Minuteman Press Intern., Inc.,*
747 F.Supp. 552 (W.D. Mo. 1990)....................................................................... 15

*Howard v. Nitro-Lift Technologies, L.L.C.,*
2011 OK 98, 273 P.3d 20 ..........................................................................17, 18, 19, 20

*Jacobs v. Lancaster,*
  526 F.Supp. 767 (W.D. Okla. 1981)........................................................... 20

*LaBadie v. Protec Fuel Management, LLC,*
  2011 WL 43088 (N.D. Okla., Jan. 4, 2011) ............................................. 16

*Lapolla Industries, Inc. v. Hess,*
  325 Ga. App. 256 (Ga. Ct. App. 2013)..................................................... 18

*Mendoza v. Microsoft, Inc.,*
  2014 WL 842929 (W.D. Tex., March 5, 2014)........................................12

*M.G.J. Industries, Inc. v. Greyhound Financial Corp., Inc.,*
  826 F.Supp. 430 (M.D. Fla. 1993) ........................................................... 17

*M/S Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972) ............................................................................ 12, 13, 17

*Nitro-Lift Technologies, L.L.C. v. Howard,*
  133 S.Ct. 500 (2012) .................................................................................. 17

*Nuvio Corp. v. LogiSense Corp.,*
  2008 WL 5192122 (D. Kan. 2008)...................................................... 15, 20

*Riley v. Kingsley Underwriting Agencies, Ltd.,*
  969 F.2d 953 (10th Cir. 1992) .................................................................. 13

*Scanline Med., L.L.C. v. Brooks,*
  2011 OK CIV APP 88, 259 P.3d 911 ........................................................ 17

*Scherk v. Alberto-Culver Co.,*
  417 U.S. 506 (1974) ................................................................................... 20

*Stewart Org., Inc. v. Ricoh Corp.,*
  487 U.S. 22 (1988) ............................................................................... 20, 21

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ................................................................................... 20

*William A. Smith Contracting Co. v. Travelers Indem. Co.,*
  467 F.2d 662 (10th Cir. 1972) .................................................................. 21

*Williams v. Bowman Livestock,*
  927 F.2d 1128 (10th Cir. 1991) ................................................................ 13

*Yery v. Yery,*
  1981 OK 46, 629 P.2d 357 ........................................................................ 19

iii

**STATUTES**

15 Okla. Stat. § 201......................................................................................................... 18

15 Okla. Stat. § 219A................................................................................................. 17, 18

18 Okla. Stat. § 1088....................................................................................................... 13

28 U.SC. § 1404.............................................................................................. 3, 11, 12, 20

**RULES**

Fed.R.Civ.P. 9.................................................................................................................. 13

Fed.R.Civ.P. 11................................................................................................................ 13

**OTHER**

Tex. Bus. & Comm. Code 15.04...................................................................................... 23

Tex. Bus. & Comm. Code 15.50...................................................................................... 23

Tex. Bus. & Comm. Code 15.51...................................................................................... 23

Tex. Bus. & Comm. Code 15.52...................................................................................... 23

Plaintiffs Chris Cardoni ("Cardoni"), Wesley Webb ("Webb"), Terry Blain ("Blain"), and Billy Shaffer ("Shaffer")(sometimes collectively referred to as "Plaintiffs") respectfully submit this Response and Objection to Defendant Prosperity Bank's ("Prosperity") Motion to Transfer Venue (Docket No. 14).  This Response is timely submitted, in accordance with this Court's June 19, 2014 Minute Order directing an expedited Response and Reply (Document No. 18).   In support of this Response, the Plaintiffs set forth the following Preliminary Statement, Statement of Facts, and Argument and Authorities.

## I.       <u>PRELIMINARY STATEMENT</u>

Plaintiffs respectfully request that this Court deny Prosperity's Motion to Transfer Venue because the subject forum selection clause that Prosperity seeks to enforce was induced by fraud and coercion, is overreaching, and is in violation of Oklahoma's public policy.

Plaintiffs are current employees of Prosperity.  Plaintiffs were all previously employed by F&M Bank ("F&M") in Tulsa, Oklahoma.  Defendant Anthony Davis ("Defendant Anthony Davis") was the Chairman and CEO of F&M and, after Prosperity acquired F&M, he became the Chairman of the Tulsa Area for Prosperity.   Defendant Eric Davis ("Defendant Eric Davis")(sometimes both are referred to collectively as the "Davis Defendants") was the President of F&M Bancorporation, Inc. and, after Prosperity acquired F&M, he became the Vice-Chairman of the Tulsa Area for Prosperity.   The Davis Defendants and Prosperity may collectively be referred to throughout this Response as "Defendants."

On a Friday afternoon in August, 2013 the Plaintiffs, along with other F&M employees, were all told to attend an F&M meeting that Sunday.  No explanation was provided by F&M for this meeting.  During the Sunday meetings (which occurred with individual employees on 20 minute intervals), Plaintiffs, and other F&M employees, were all told for the first time that F&M

1

was proposing a sale to Prosperity.  The Plaintiffs and other F&M employees were presented with new, non-negotiable Employment Agreements ("Agreements") that would cover the terms and conditions of their employment with Prosperity.  Plaintiffs were told that they had two days to sign the Agreements or their employment would be terminated.

These Agreements all contain a forum selection clause that provides that "exclusive venue of any dispute relating to this agreement shall be … in Texas."  Additionally, the Agreements contain extremely overly broad non-compete agreements that prohibited employees like Plaintiffs from competing against Prosperity anywhere in a geographic area of 50 miles from any Prosperity "banking center"[1] (an undefined term) or former banking centers of F&M.  *See* Agreement, Paragraph 6.3 (a).  Additionally, employees were prohibited from "participat [ing] in…**or be[ing] connected in any manner** with any...entity engaging in a business similar to that of [Prosperity] within the Market Area" (emphasis added) and were prohibited from calling on servicing or soliciting business from customers "or prospective customers" of Prosperity.  *Id.* at (b) and (c).

The Plaintiffs had grave concerns about being required to litigate any claim they might have in a Texas and about the extremely overly broad non-compete clause which could prevent the Plaintiffs from being able to take any job within 50 miles of any Prosperity "banking center" or former F&M "banking center."  For example, Plaintiff Webb is a single father who has joint custody of his children and cannot move more than 75 miles away from Tulsa without being required to give up custody of his children. Plaintiff Webb had concerns that the geographical limitation contained in the Agreement would mean he could not obtain another job in the Tulsa area, and therefore he would jeopardize his custody of his children.  Additionally, the non-

---

[1]  The term "banking center" could even be broadly interpreted to mean an ATM machine.

competes were so broadly worded they could arguably even keep the Plaintiffs from opening a bank account or running in a marathon sponsored by another banking institution.

When Plaintiff Cardoni and Shaffer expressed their concerns about the Agreement -  and specifically the Texas forum selection and choice of law clauses - they were specifically told by the Davis Defendants and/or F&M's President and Executive Vice President of Human Resources that **the forum selection clause identifying Texas as the proper venue was not enforceable and would never be used to require the Plaintiffs to litigate claims they may have against Prosperity in a Texas Court and under Texas law.**

Based upon the representations of the Davis Defendants, as well as other F&M employees, the Plaintiffs were fraudulently induced and coerced to sign and did indeed sign the Agreements.  As set forth herein, the subject forum selection clause contained in the Agreements is invalid and carries no weight.  The clauses are also in violation of Oklahoma's public policy against non-compete agreements.

Additionally, a traditional 28 U.S.C. § 1404 analysis establishes that venue in the Northern District of Oklahoma is correct, since the Plaintiffs reside in the Northern District, the contracts were negotiated here, and Prosperity maintains offices here.

## II.   <u>STATEMENT OF FACTS</u>:

1.    Plaintiffs are Oklahoma citizens and Tulsa residents or residents of the surrounding area.  Plaintiffs have lived and in or around Tulsa between 12 and 30 years. Plaintiffs are Senior Vice Presidents at Prosperity and were former employees of F&M in Tulsa. *See* Affidavits of Plaintiffs Chris Cardoni, attached hereto as Exhibit "1"; Wesley Webb, Exhibit "2"; Terry Blain, Exhibit "3"; and Billy Shaffer, Exhibit "4."

3

2.      Defendant Anthony Davis was the Chairman and CEO of F&M and, after Prosperity acquired F&M, he became the Chairman of the Tulsa Area for Prosperity.  Defendant Eric Davis was the President of F&M Bancorporation and, after Prosperity acquired F&M, he became the Vice-Chairman of the Tulsa Area for Prosperity.  *Id.* and *see* Verified Petition, attached hereto as Exhibit "5."

3.      Prosperity is engaged in the business of providing banking services and operates business locations throughout Texas and Oklahoma, including Tulsa. Prosperity's business model to increase its stock value is based primarily on acquiring and aggregating established banks.  This primary business model is therefore different than that of an "organic growth bank" (like F&M was) which primarily adds asset value and revenue by originating and increasing individual loans and collecting deposits through business solicitation efforts of its officers, rather than through acquiring other banking institutions.  *See* Petition, Ex. "5."

4.      According to its Corporate Profile posted on its website, Prosperity Bancshares, Inc. is an $18.913 billion regional financial hold company based out of Houston, TX.  *See https://www.prosperitybankusa.com/profile.aspx.*

5.      Plaintiffs worked for F&M, until Prosperity acquired F&M.  The merger between F&M and Prosperity closed on March 26, 2014.  *See* Affidavits, Ex. 1-4.

6.      On Friday, August 23, 2013, Plaintiffs, and other F&M employees, were instructed by email to come to the Tulsa bank office on Sunday, August 25 for a meeting; the purpose of the meeting was not explained.  On the afternoon of Sunday, August 25, 2013, the Davis Defendants first announced to Plaintiffs the proposed sale of F&M to Prosperity, and presented them with drafts of new, non-negotiable Employment Agreements ("Agreements") that would cover the terms and conditions of their employment with Prosperity.  Plaintiffs had no

4

prior knowledge of the sale, which had been negotiated for many months prior to its announcement.  *See* Affidavits, Ex. 1-4.  Plaintiffs received the "final" version of their employment agreements towards the end of the business day on Monday, August 26, 2014.  *See* Cardoni Aff., Ex. 1, ¶¶ 7-8; Webb Aff., Ex. 2, ¶¶ 7-8; Blain Aff., Ex. 3, ¶¶ 7-8; Shaffer Aff., Ex. 4, ¶¶ 7-8.

7.     All Agreements are form contracts that contain the same restrictive covenants, including non-competition, non-participation, and non-solicitation clauses.  The Defendants presented employment agreements with the same restrictive covenants to at least 25 other former F&M employees on August 25, 2013.  *See* Verified Petition, Ex. 5; *See* Agreements, Exhibit 6.

8.     The Plaintiffs were told on Sunday, August 25 that they had until Tuesday, August 27 to accept and sign the Agreements.  Further, Plaintiffs were told that the proposed sale of F&M to Prosperity was in part contingent on their execution of the Agreements, and that the deal might fall apart if Plaintiffs did not sign the Agreements.  *See* Cardoni Aff., Ex. 1, ¶ 10; Webb Aff., Ex. 2,¶ 10; Blain Aff., Ex. 3, ,¶ 10; Shaffer Aff., Ex. 4, ¶ 10.

9.     The Agreements include both Prosperity and F&M as parties to the contract and specifically state that it is being entered into "in connection with the Agreement and Plan of Reorganization, dated as of August 29, 2013 (the 'Merger Agreement'), by and between Prosperity …. and F&M."  *See* Agreements, Ex. 6, p. 1.  Additionally, the Agreement also states that the employees agreement with the Agreement's non-compete and non-solicitation terms is "a material factor, material inducement and material condition to Prosperity's participation in the transactions contemplated by the Merger Agreement."

10.    It is estimated that the Davis Defendants (or their family members) made an estimated $40 to $50 million from the Prosperity merger.

11.     The Agreements are all signed by the Plaintiffs, by David Zalman, on behalf of Prosperity, and by Anthony Davis, as Chairman and Chief Executive Officer of F&M.  *See* Agreements, ex. 5, (signature page).

12.     The Defendants indicated Plaintiffs could lose their jobs if they did not sign the Agreements.  The Defendants and their agents also told some of the Plaintiffs that they could lose their 2012 earned but unvested bonus and 2013 bonus if they did not sign the Agreements. *See* Cardoni Aff., Ex. 1, ¶¶ 13-14.

13.     On August 27, 2013, Plaintiff Cardoni spoke with Jeff Pickryl, the President of F&M ("Mr. Pickryl") regarding concerns that had been raised about the terms of the Agreement. Mr. Pickryl specifically told Plaintiff Cardoni that the Agreement was not enforceable in Oklahoma.  Mr. Gregg Jaynes (F&M's Executive Vice President of Human Resources) ("Mr. Jaynes") was also present during this discussion.  When Plaintiff Cardoni asked whether Mr. Jaynes agreed with Mr. Pickryl's statement about the agreement not being enforceable in Oklahoma, Mr. Jaynes said he did.  When Plaintiff Cardoni asked whether his version of the employment agreement could be changed from Texas to Oklahoma, he was told nothing could be changed.  *See* Cardoni Aff., Ex. 1, ¶ 15; Petition, Ex. 5, ¶ 29.

14.     Mr. Pickryl represented to Plaintiffs that he (Mr. Pickryl) would run all of Commercial Lending at Prosperity, including the special lines of business like Energy, and that he would have the highest approval authority under David Zalman, Chairman and CEO of Prosperity.  Mr. Pickryl further represented that he would be a voting member of senior loan committee.  It does not appear that Mr. Pickryl currently has any of these duties or authorities. *See* Cardoni Aff., Ex. 1, ¶ 16; Webb Aff. Ex. 2, ¶ 11; Shaffer Aff., Ex. 4, ¶ 10.

15.     Later in the morning of August 27th, Plaintiff Cardoni followed up with Mr. Jaynes about the Agreement's enforceability in Texas versus Oklahoma.   Plaintiff Cardoni expressed to Mr. Jaynes his concerns about possibly getting involved in a legal dispute filed in a Texas court.  Plaintiff again asked if the Agreement could be changed to reflect Oklahoma law and allow for the filing of any dispute in Oklahoma courts, but was told by Mr. Jaynes again that Prosperity would not change the Agreement.   However, Mr. Jaynes responded to Plaintiff Cardoni's fears by telling him:  "that he had worked in human resources for 20 years.  He said it did not matter that the Agreement said Texas; **because I live and work in Oklahoma any dispute would be decided by a court in Oklahoma under Oklahoma law and would not be decided in Texas by a Texas court**."  *See* Cardoni Aff., Ex. 1, ¶ 17 (emphasis added).

16.     Plaintiff Cardoni understood that Mr. Jaynes was representing to him and assuring him that Prosperity would not enforce the Agreement against me in a Texas Court or under Texas law.  *See* Cardoni Aff., Ex. 1, ¶ 17 (emphasis added).

17.     Plaintiff Cardoni is the supervisor of Plaintiffs Wes Webb and Terry Blain.  Mr. Cardoni shared his conversations made by Mr. Jaynes and Mr. Pickryl with Plaintiffs Webb and Blain.  *See* Cardoni Aff., Ex. 1, ¶ 18, Webb Aff., Ex. 2, ¶ 15, Blain Aff. Ex. 3, ¶ 15.  Mr. Cardoni shared the same with Plaintiff Shaffer.  *Id.*  Plaintiffs had concerns about the non-compete and the forum selection clauses.  For example, Plaintiff Webb is a single father who has joint custody of his children and cannot move more than 75 miles away from Tulsa without being required to give up custody of his children.  Plaintiff Webb had concerns that the geographical limitation contained in the Agreement would mean he could not obtain another job in the Tulsa area, and therefore he would jeopardize his custody of his children.  Additionally, the non-competes were so broadly worded, they could arguably even keep the Plaintiffs from opening a bank account or

running in a marathon sponsored by another banking institution.  *See* Webb Aff., Ex. 2, ¶ 13. The Plaintiffs were likewise concerned about being sued in a Texas court under Texas law when they are and have been citizens of Oklahoma.  *See e.g.* Cardoni Aff, Ex. 1 ¶ 21; Blain Aff. Ex. 3 ¶ 13.

18.     Plaintiff Shaffer also had his own conversation with both Mr. Pickryl and Mr. Jaynes on August 25, 2013.  During this conversation, both Mr. Pickryl and Mr. Jaynes clearly represented to Mr. Shaffer that the Agreement was not enforceable.  *See* Shaffer Aff. Ex. 4, ¶ 12; Petition, Ex. 5, ¶ 29.

19.     Plaintiff Shaffer also had a conversation with Defendant Anthony Davis and Defendant Eric Davis on August 25, 2013.  During this conversation, Plaintiff Shaffer told both Anthony and Eric Davis that he had other ventures he was pursuing and signing the employment agreement was not something he needed to do in light of its restrictions.  Eric Davis responded by stating that "the Prosperity contract would not be enforceable in an Oklahoma court and that's what mattered since [Shaffer] lived and worked in Oklahoma."  *See* Shaffer Aff., Ex. 4, ¶ 14.

20.     Plaintiff Shaffer also met with Mr. Jaynes again on August 26, 2013 to discuss the Agreement.  Mr. Shaffer once again raised his concerns regarding the Agreement's restrictions and provisions.  Mr. Jaynes assured Mr. Shaffer that "as a resident of Oklahoma working in Oklahoma, **any issue under the [Agreement] that involved [Shaffer] would be decided in an Oklahoma court and the restrictions were unenforceable in Oklahoma**."  *See* Shaffer Aff., Ex. 4, ¶ 16 (emphasis added).

21.     Plaintiff Shaffer likewise understood that Mr. Jaynes and Defendant Eric Davis were representing to him and assuring him that Prosperity would not enforce the Agreement against him in a Texas Court or under Texas law.  *See* Shaffer Aff., Ex. 4, ¶ 17.

22.     Defendants also told Plaintiffs that the terms and policies of Prosperity for making loans would remain the same as the terms and policies they used while employed at F&M. Further, Defendants told Plaintiff Cardoni that he would be the head of the Energy Lending Department for Prosperity after the merger and that he would report to Jeff Pickryl.  Because of Prosperity's primary business model, Defendants knew, at the time of telling Plaintiffs that the terms and policies would remain the same, that Prosperity could not, in fact, use F&M's terms and policies.  *See* Cardoni Aff., Ex. 1, ¶ 21, ¶ 25; Webb Aff., Ex. 2, ¶ 21, Shaffer Aff., Ex. 4, ¶ 21; Petition, Ex. 5.

23.     On March 24, 2014, two days before the merger closed and after Plaintiffs signed the Agreements, Prosperity told Plaintiff Cardoni that Prosperity would no longer use F&M's terms and policies for future loans after June 9, 2014.  The types of loan terms and policies Plaintiffs utilized while employed by F&M are material to the exercise of their chosen profession as "organic growth" bankers and to serving their existing customers.  *See* Cardoni Aff., Ex. 1,¶ 27; Webb Aff., Ex. 2, ¶ 23; Blain Aff., Ex. 3, ¶ 21; Shaffer Aff., Ex. 4, ¶¶ 20-22.

24.     Before signing the Agreements, some Plaintiffs also asked Defendants for documentation of Prosperity's benefits package or inquired as to whether benefits would stay the same.   Defendants failed to provide benefits documentation to any Plaintiffs prior to their imposed deadline for execution of the Agreements.  Instead, Defendants told Plaintiffs that they did not have such documentation, but that their bonuses, vacation, and other benefits would be "similar" to their F&M benefits if they signed the Agreements.   Under Prosperity's benefits structure, Plaintiffs may lose up to one-third of their total compensation, and their vacation time has been halved.  Prosperity's healthcare benefits are inferior (but more costly) to what Plaintiffs previously had, and they have lost short-term disability insurance.   Plaintiffs were deliberately

misled about the lesser nature of Prosperity's benefits in order to induce them into signing the Agreements. *See* Cardoni Aff., Ex. 1, ¶¶ 28-29; Shaffer Aff., Ex. 4, ¶ 11.

25.     Since Defendants' fraudulent and oppressive inducement of Plaintiffs to sign the Agreements, the working atmosphere for Plaintiffs at Prosperity has deteriorated.  Defendants have threatened Plaintiffs that if they leave their employment at Prosperity they will sue them to enforce the Agreements' illegal restrictive covenants, despite lacking any knowledge of the terms and conditions of any prospective employment.  On behalf of Defendants, Pickryl told Plaintiff Cardoni that Prosperity has a "$10,000,000 war chest" to fight Plaintiffs in court if they leave employment at Prosperity.  At the same time, Pickryl also repeated that he knows the restrictive covenants are not enforceable in Oklahoma, but that Prosperity would try to enforce them nonetheless by "outlasting" Cardoni in a lawsuit with significant legal costs.  Defendant Eric Davis also threatened that Prosperity would sue Plaintiff Shaffer if he went to work for any other bank. *See* Plaintiffs' Motion for Temporary Restraining Order, ¶ 16.

26.     David Zalman, Chairman and CEO of Prosperity, also has threatened to sue prospective employers if they were to hire Plaintiffs, no matter the terms and conditions of their employment elsewhere.  Defendants' threats make clear that their position is that the Agreements make it impossible for Plaintiffs to comply with the illegal restrictive covenants, thus they must remain employed at Prosperity for the three-year term mandated in the Agreements. *See* Plaintiffs' Motion for Temporary Restraining Order, ¶ 17.

27.     Plaintiffs have received job offers from other banks with offices in Tulsa and elsewhere.  Plaintiffs must accept one current job offer before September 1, 2014 or the offer will be revoked. Plaintiffs also have had conditional job offers from other banks withdrawn because of the illegal Agreements and the prospective employer's concern about being sued by

Prosperity no matter the terms and conditions of Plaintiffs' employment.  Despite having economically better offers, Plaintiffs feel compelled to remain employed by Prosperity against their will because of the illegal Agreements and Defendants' repeated threats to sue them.  *See* Plaintiffs' Motion for Temporary Restraining Order, ¶ 18.

### III.    ARGUMENT AND AUTHORITIES

**A.    *ATLANTIC MARINE* DOES NOT APPLY BECAUSE NO VALID FORUM SELECTION CLAUSE EXISTS.**

The bulk of Prosperity's Motion to Transfer is premised upon its argument that *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.,* 134 S.Ct. 568, 579 (2013) applies and, therefore, the subject forum selection clause contained in the Agreements mandates transfer.  *See* Motion to Transfer, p. 9.  As set forth below, *Atlantic Marine* does not apply because no valid forum selection clause exists.

In *Atlantic Marine,* the United States Supreme Court announced an adjusted analysis to be applied under a 28 U.S.C. § 1404 (a) motion to transfer venue based upon a forum selection clause.  However, the Supreme Court specified that its analysis in it opinion "**presupposes a contractually valid forum-selection clause**."  *Id.* at fn. 5. (emphasis added).  No such valid forum selection clause exists here.

*Atlantic Marine* specifies that if a *valid* forum selection clause does exist then, a district court's usual § 1404(a) or *forum non conveniens* analysis is adjusted in three ways.  *Id.*  First, courts may accord no weight to the plaintiff's chosen forum; "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 581–82.  Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause "should not consider arguments about the parties' private interests."  *Id.* at 582.  However, the public interest factors which the Court may still consider include "the

11

administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.[2]" *Id.* at fn. 6. And at 582.  Third, if venue is transferred, the original venue's choice-of-law rules will not apply.  *Id* at 582.

However, because *Atlantic Marine* presupposes a valid forum selection clause, this Court must first determine whether the subject forum selection clause is a contractually valid forum-selection clause.  *See e.g., Mendoza v. Microsoft, Inc.,* 2014 WL 842929 (W.D. Tex. March 5, 2014)(before addressing *Atlantic Marine,* Court must first determine whether the subject forum selection clause was valid, since *Atlantic Marine* presupposes a valid forum selection clause).  As set forth below, the clause is not valid because it was fraudulently induced, coerced and is overreaching.  Accordingly the *Atlantic Marine* analysis utilized by Prosperity is inapplicable and this Court should utilize a traditional § 1404 analysis.

**B.     THE SUBJECT FORUM SELECTION CLAUSE IS NOT VALID BECAUSE IT WAS INDUCED BY FRAUD AND COERCION, IS OVERREACHING AND VIOLATES OKLAHOMA PUBLIC POLICY.**

A forum clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972).  Even though *Bremen* created a presumption in favor of enforcing forum selection clauses, *Bremen* recognized three reasons that would make

---

[2]  If the Court does apply the *Atlantic Marine* analysis, these factors still weigh in favor of this Court denying the Motion to Transfer, and Plaintiffs refer this Court to the relevant § 1404 analysis set forth in this Response at pp. 20-24.  As analyzed herein, the public interest factors do weigh heavily in favor of this Court deciding this local controversy involving Oklahoma employees and Oklahoma non-compete law.  Additionally, fraud in the inducement is arguably an "extraordinary circumstance" requiring a motion to transfer be denied.  *Id* at 581.

enforcement of a forum selection clause unreasonable: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought. *Id.* at 1916-1917.

### 1.   The Forum Selection Clause in the Agreements Was The Product of Fraud.

Forum selection clauses are unreasonable and thus unenforceable if "the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15. Thus, any "party resisting enforcement of a forum selection provision carries a heavy burden of showing that provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 957-960 (10th Cir. 1992)(requiring party who seeks to avoid a choice provision on fraud theory to plead fraud within the confines of Fed.R.Civ.P. 9(b) and 11 and with respect to the specific provision at issue).

In the instant matter, the forum selection clauses were invalid because the Defendants[3] fraudulently induced[4] Plaintiffs' agreement to that specific provision. The Plaintiffs have

---

[3]   F&M was a party to the Agreement and the Davis Defendants stood to earn a substantial amount of money once the merger went through. Prosperity would be responsible for statements made by the Davis Defendants and by F&M employees (who are now Prosperity employees). Prosperity, as the successor corporation of F&M, may be liable for the debts and liabilities of F&M based upon the merger transaction. *See e.g.,* 18 Okla.Stat. § 1088; *Williams v. Bowman Livestock,* 927 F.2d 1128 (10th Cir. 1991)(noting that Oklahoma statutory and common law establish successor liability if there is a statutory merger or consolidation, but declining to find the same in the instant circumstances).

[4] Statements regarding one party's intention to not enforce provisions of a written agreement to its fullest extent are misrepresentations of fact that support a claim for fraudulent inducement. *First Nat. Bank in Durant v. Honey Creek Entertainment Corp.,* 2002 OK 11, P.3d 100 (statements by bank's CEO that bank would sell borrower's assets before seeking payment on

13

properly plead such fraud with particularity so as to deny the Motion to Transfer Venue.  The Plaintiffs have specifically alleged in both their State Court Petition and in the attached affidavits[5] that:

- The Petition filed by the Plaintiffs and the Affidavits attached hereto specifically allege that the Vice President of Human Resources of F&M told Plaintiff Cardoni that: "he [Mr. Jaynes] had worked in human resources for 20 years.  He said it did not matter that the Agreement said Texas; because I live and work in Oklahoma any dispute would **be decided by a court in Oklahoma under Oklahoma law and would not be decided in Texas by a Texas court**."  Petition, Ex. 5,  ¶ 32; Cardoni Affidavit, Ex. 1, ¶ 17 (emphasis added).

- F&M's President represented to Plaintiff Cardoni when Plaintiff Cardoni raised concerns about the Agreement that it was no enforceable in Oklahoma.  *See* Cardoni Aff., Ex. 1, ¶ 15; Petition, Ex. 5, ¶ 29.

- Plaintiff Shaffer also had his own conversation with both Mr. Pickryl and Mr. Jaynes in which they informed him the Agreement was not enforceable.  *See* Shaffer Aff. Ex. 4, ¶ 12; Petition, Ex. 5, ¶ 29.

- Plaintiff Shaffer also had a conversation with Defendant Anthony Davis and Defendant Eric Davis on August 25, 2013 in which Eric Davis responded that "the Prosperity contract would not be enforceable in an Oklahoma court and that's what mattered since [Shaffer] lived and worked in Oklahoma."  *See* Shaffer Aff., Ex. 4, ¶ 14.

---

guaranty and foreclosing on property and that guarantor would only be liable for one third of the debt was a misrepresentation of fact that could support fraudulent inducement claim; the alleged statements related to the intention of the lender not to enforce the written agreements to their fullest extent).

[5] When reviewing a motion to transfer venue under § 1404, this Court may consider evidence outside the pleadings and resolve any inferences or conflicts in favor of the non-moving party. *Arr-Maz Products, L.P. v. Shilling Const. Co., Inc.,* 2012 WL 5251191 (N.D. Okla., Oct. 24, 2012).

●	Plaintiff Shaffer met with Mr. Jaynes again to discuss Shaffer's concerns regarding the Agreement's restrictions and provisions and Mr. Jaynes assured him that Shaffer "as a resident of Oklahoma working in Oklahoma, **any issue under the [Agreement] that involved [Shaffer] would be decided in an Oklahoma court and the restrictions were unenforceable in Oklahoma**." *See* Shaffer Aff., Ex. 4, ¶ 16 (emphasis added).

Courts have refused to transfer cases based upon the existence of a forum selection clause when sufficient allegations of fraudulent inducement have been made by the party resisting transfer.  For example, in *Nuvio Corp. v. LogiSense Corp.*, 2008 WL 5192122, *2 (D. Kan. 2008), the court declined to transfer based solely on a forum selection clause included in a contract that was alleged to be fraudulent as to its essential elements.  Other courts have likewise declined to transfer a case when allegations regarding the fraudulent inducement have been sufficiently alleged.  *See e.g. Hoffman v. Minuteman Press Intern., Inc.*, W.D. Mo.1990, 747 F.Supp. 552 (Franchisees' fraud and breach of contract action against franchisor would not be transferred to forum specified in forum selection clause in franchise agreements, though agreements established that specified forum also provided governing law, in view of franchisees' allegations that they were small, unsophisticated business people who were fraudulently induced into entering agreements and that litigating case in other forum would be such hardship that franchisees would be forced either to forego suit or to carry heavy financial burden in addition to one they alleged franchisor already dumped on them); *11500 LLC v. Cummings,* 2008 WL 4681371 (W.D. Mo. Oct. 22, 2008)(court found that plaintiff sufficiently pled facts to support a claim of fraud in the inducement thereby removing the presumption of validity attached to the forum selection clause where plaintiff alleged that defendants misrepresented facts to the plaintiff prior to the time the plaintiff's executed the subject contract).

Here, the Plaintiffs have adequately alleged fraud in the inducement *specifically going to the forum selection clause*.   The Plaintiffs have provided this Court with sworn affidavits identifying several conversations that occurred prior to the execution of the Agreement, and in which the Plaintiffs were directly assured the Agreements would not be used to pursue them in a Texas Court under Texas law.

At a minimum, there is conflicting evidence as to whether a valid forum selection clause exists, in light of the Plaintiffs' detailed allegations of fraud and coercion.   Such conflict should be resolved in favor of Plaintiffs, the non-moving parties, and the motion to transfer venue should be denied.  *LaBadie v. Protec Fuel Management, LLC,* 2011 WL 43088 (N.D. Okla., Jan. 4, 2011)(Honorable Claire V. Eagan)(denying motion to transfer venue where factual dispute existed as to whether employee signed employment agreement).

**2.   The Subject Forum Selection Clause is Overreaching.**

Under Oklahoma law, "[f]orum selection clauses are *prima facie* valid and should be enforced unless they can be shown to be unreasonable under the circumstances of the case….[T]he present trend is to apply a 'reasonableness' test in determining whether to enforce such a clause. If a contract was not negotiated by the parties, or is the result of overreaching or of the unfair use of unequal bargaining power, or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the action, it may be found invalid."  *Adams v. Bay, Ltd.*, 2002 OK CIV APP 117, ¶ 6, 60 P.3d 509, 510-11 (internal citations omitted).

The forum selection clause is overreaching and was the result of disparity of bargaining power.   As set forth in the factual section of this Response, the Plaintiffs had no choice but to sign the agreement within two (2) days after being presented with the same.   Plaintiffs were required to sign the Agreement, or lose their jobs and their bonuses.   In *Eads v. Woodmen of the*

*World Life Insurance Society*, 1989 OK CIV APP 19, ¶¶ 9-16 785 P.2d 328, 330-332, the Oklahoma Court of Civil Appeals held that a forum selection clause in a form employment agreement was unreasonable and unenforceable because it was not freely negotiated and the employee was forced to choose between signing the contract or losing his job.  All in all, Plaintiffs were essentially told that they could not negotiate, would lose significant income, and be out of a job if they did not sign the Agreement. The Court should thus follow *Eads* and find that the forum selection clause is unenforceable.  *See also M.G.J. Industries, Inc. v. Greyhound Financial Corp., Inc.*, 826 F.Supp. 430 (M.D. Fla. 1993)(Forum selection clause with lender was not enforceable; clause was procured by using borrowers' asset purchase deposit, which would be forfeited if deadline passed as leverage for entering into contract, and thus lender was in position to coerce borrowers into accepting unfavorable terms).

### 3.   The Subject Forum Selection Clauses Violate Oklahoma Public Policy.

Forum selection clauses may be set aside if they contravene a strong public policy of the forum in which suit is sought.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).  The forum selection clause would violate Oklahoma's strong public policy against non-compete agreements.  Non-compete agreements are undeniably in violation of Oklahoma's established public policy.  *See* 15 O.S. § 219A; *Howard v. Nitro-Lift Technologies, L.L.C.*, 2011 OK 98, 273 P.3d 20, *overruled on other grounds*, *Nitro-Lift Technologies, L.L.C. v. Howard,* 133 S.Ct. 500 (2012); *Scanline Med., L.L.C. v. Brooks*, 2011 OK CIV APP 88, 259 P.3d 911, 913 ("[Sections 217 and 219A] express the public policy of this state concerning covenants not to compete."). As set forth in the Plaintiffs' Motion for Temporary Restraining Order filed in the District Court of Tulsa, County, State of Oklahoma, the non-compete clauses contained within the Agreements violate Oklahoma's relevant non-compete statute, 15 Okla.Stat. § 219A, which provides that an

employee *is* specifically allowed to engage in "the same business as that conducted by the former employer or in a similar business of that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer."  *Id.*

In *Howard* the Oklahoma Supreme Court construed Section 219A, declaring:

> The plain, clear, unmistakable, unambiguous and unequivocal language of 15 O.S. § 201, § 219A *prohibits employers from binding employees to agreements which bar their ability to find gainful employment in the same business or industry of that of the employer*.  The only exception allowed by the statutory provision is that the employee may be barred from soliciting goods or services from the employer's established customers.

*Howard*, 2011 OK 98, ¶ 21, 273 P.3d at 28 (emphasis added).

The subject non-compete covenants contained within the Agreements go well beyond the bounds of what is allowed under Section 219A and thus violate Oklahoma's public policy.  In fact, Article 6.3(b), prohibits Plaintiff's ability to "participate in…**or be connected in any manner** with any...entity engaging in a business similar to that of [Prosperity] within the Market Area." (emphasis added).  This could reasonably be interpreted as preventing Plaintiffs from even considering or receiving a job offer from another bank.  It is also much broader, it prevents Plaintiffs from being a customer of another Tulsa bank or volunteering at a charity event sponsored by a competing bank or even running in the 2014 Tulsa Federal Credit Union 5K race.  It is overbroad and illegal.  And it is currently harming Plaintiffs.

Transferring the case to Texas, where Texas law would possibly uphold these non-compete agreements, would bind Oklahoma citizens that are working in Oklahoma in violation of Oklahoma public policy.  Several other courts have held forum-selection clauses were void because they would result in the enforcement of a non-compete agreement in violation of public policy.  *See, e.g., Lapolla Industries, Inc. v. Hess*, 325 Ga. App. 256 (Ga. Ct. App. 2013)

18

(refusing to enforce Texas choice-of-law and Texas forum-selection clauses in a non-compete agreement because it would violate Georgia's public policy against enforcement of non-competition agreements.); *Beilfuss v. Huffy Corp.*, 685 N.W.2d 373, 378 (Wis. Ct. App. 2004). In essence, enforcing the forum selection clause would allow Prosperity to do indirectly, that what it could not do directly.

Moreover, in *Eads v. Woodmen of the World Life Insurance Society*, 1989 OK CIV APP 19, ¶¶ 9-16 785 P.2d 328, 330-332, the court refused to shut to doors of an Oklahoma courthouse to Oklahoma citizens stating, "Our courts have acknowledged a policy favoring access to Oklahoma courts by resident plaintiffs." *Eads*, 1989 OK CIV APP at ¶ 19, 785 P.2d 331 (citing *Yery v. Yery,* 1981 OK 46, 629 P.2d 357). Enforcing the forum selection clause here would lead to Texas trampling on Oklahoma public policy. Refusing to enforce the clause would protect Oklahoma citizens and uphold Oklahoma law.

Interpreting the relevant Oklahoma statutory language also gives reason to ignore the forum selection clause. Section 219A states that "*any provision* in a contract between an employer and employee in conflict with [the public policy] shall be void and unenforceable." (emphasis added). *Howard* defined the term "any provision" broadly, stating, "The term 'any' is all-embracing and means nothing less than 'every' and 'all.'" *Howard*, 2011 OK at ¶ 21, 273 P.3d at 28. A forum selection clause that would move the case to a hostile jurisdiction, such as Texas, is thus "any provision" that would violate the public policy of Oklahoma.

Also in *Howard*, the Oklahoma Supreme Court already gave a strong persuasive reason that courts should not enforce a forum selection clause if the agreement was not based on a valid contract. *Howard* involved whether an arbitration clause in an employment contract with a non-compete clause prohibited Oklahoma courts from having judicial review. *Howard* held that

19

because the underlying non-compete contract was void, so too was the arbitration clause requiring the parties to arbitrate, ironically, in Texas.  *Id.* at ¶¶ 9-14.  The United States Supreme Court previously noted that "[an] agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause…."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974).  Equating an arbitration clause to a forum selection clause thus strengthens the reasoning in *Howard*.  Simply put, the Oklahoma Supreme Court's reasoning implies that a forum selection clause should not be upheld where, as here, the clause is based on an invalid non-competition contract.

In sum, the forum selection clause was non-negotiable, induced by fraud, based on insinuated threats, and it violates Oklahoma public policy. The Oklahoma Supreme Court has already implied that this type of clause is unenforceable under the circumstances.  And the very terms of the agreement make it overreaching and ambiguous.

## C.  SECTION 1404 ANALYSIS SUPPORTS DENIAL OF THE MOTION TO TRANSFER VENUE.

Because no valid forum selection clause exists, a traditional 28 U.S.C. §1404 analysis should be conducted.  *See e.g., Nuvio Corp. v. LogiSense Corp.,* 2008 WL 5192122 (D. Kan., Dec. 11, 2008).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).   "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Jacobs v. Lancaster,* 526 F.Supp. 767, 769 (W.D.Okla.1981) (citing *Van Dusen v. Barrack,* 376 U.S. 612 (1964); *Cont'l Grain Co. v. Barge FBL–585,* 364 U.S. 19 (1960)).  Section 1404(a) is intended to "place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case

consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (internal quotations omitted).   As the moving party, Prosperity bears the burden of proving that the existing forum is inconvenient.   *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991).

Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed.   *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972).   Moreover, a court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient.   *Employers Mut. Cas. Co. v. Bartile Roofs,* 618 F.3d 1153, 1168 (10th Cir. 2010).   Here, Prosperity has made no valid argument that litigating this matter in Oklahoma - where it maintains offices and employees - would be inconvenient.

In addressing transfer, courts weigh: (1) plaintiff's choice of forum (2) accessibility of witnesses and other sources of proof, including compulsory process to ensure attendance of witnesses (3) cost of making necessary proof (4) questions as to enforceability of judgment (5) relative advantages and obstacles to a fair trial (6) difficulties from congested dockets (7) possibility of questions of conflict of laws (8) advantage of local court determining questions of local law, and (9) other practical considerations.   *Employers Mut. Cas. Co.*, 618 F.3d at 1168. The foregoing factors support denial of the Motion to Transfer Venue.

*Plaintiff's Choice of Forum*: The Plaintiffs have chosen Oklahoma as their forum.  They are long-time residents of Oklahoma (specifically Tulsa, Oklahoma) and work in Tulsa. Likewise the facts giving rise to this lawsuit all occurred in Tulsa, Oklahoma.  As alleged in the Verified Petition, the meetings wherein F&M employees were fraudulently induced to enter into

21

these Agreements all occurred in Oklahoma, and the Agreements were executed by the Plaintiffs in Oklahoma.  Plaintiffs currently work for Prosperity in Prosperity's Oklahoma locations.  The only connection with Texas (aside from the invalid forum selection clause) is that Prosperity's holding company is based out of Houston and it is a Texas chartered bank.  However, Oklahoma has the most significant contacts with the transactions underlying the causes of action alleged by the Plaintiffs and therefore Oklahoma is the more convenient forum.  *See e.g. Cottonwood Natural Resources, Ltd v. Circle Star Energy Corp.,* 2012 WL 3839536, * 8 (N.D. Okla., Sept. 5, 2012)(Honorable Claire V. Eagan)(Oklahoma had significant interest in dispute as defendant initiated contact with plaintiffs in Oklahoma and negotiated and entered into contract in Oklahoma).

Even under Texas law, a choice of law provision will not be applied if the chosen jurisdiction has no "relation whatever to [the parties] or their agreement."  *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).  As set forth herein, the Plaintiffs do not live and work in Texas and the contracts were negotiated and executed in Oklahoma, not Texas.

*Accessibility of Witness and Proof*: The relevant witnesses and documents are located in Oklahoma.  As alleged in the Verified Petition, the necessary witnesses to this matter are Jeff Pickryl, the former President of F&M and Gregg Jaynes, the former Vice President and Human Resources Director for F&M.  Both these witnesses work and, to the best of Plaintiffs' knowledge, reside in Oklahoma.  The Davis Defendants are also necessary witnesses to this matter.  Although they now claim they have been Texas residents since January, 2014, they continue to work in Oklahoma (as evidenced by their titles) and own property in Oklahoma[6].

---

[6]  Despite their statements in their Affidavits on the Notice of Removal that they have "leased" apartments in Dallas, TX since January of this year, the Tulsa County Assessor's website indicates that Eric L and Patricia I Davis continue to own a home in Tulsa valued at $1.1 million

Likewise, any documents these parties would be located in Oklahoma and the cost of presenting proof at trial is lessened by this matter being tried in Oklahoma.  Defendant has not identified how it would be more convenient for the witnesses (the majority of whom reside in Oklahoma) to appear in a Texas Court.  As noted above, the purpose of a venue transfer is not simply to shift the cost of litigation from one side to the other, and does not favor Defendants' request.

*Difficulties of Congested Dockets*: As noted herein in their Petition, the Plaintiffs have been offered jobs by another party, but these offers expire in September, 2014.   Plaintiffs anticipate that trial may be had in this jurisdiction in a much timelier fashion that in the Southern District of Texas.  *See Cottonwood* at * 8 (noting "this [Northern District] Court does not have congested dockets").

*Conflict of Laws and Advantage of Local Court Determining Local Questions of Law*: As set forth above, the subject agreements are in violation of public policy of Oklahoma.   The Courts of Oklahoma are in the best position to review and apply Oklahoma's law regarding non-compete agreements.  Oklahoma has a solid policy against non-compete agreements unless they follow our statutory scheme (the Agreements here clearly do not).   If Plaintiffs were Texas residents, the non-compete could be enforced to the extent reasonable, as recognized by Tex. Bus. & Comm. Code sections 15.50-52.  It is presently unclear whether Texas law requires application of this statute to an entirely out of Texas employee.  The Texas statutory scheme notes that it applies to commerce or trade "wholly or partly" in Texas.  *Id*. Section 15.04.  Texas law has declared the public policy of Texas to not impose the law of another state on a Texas

---

and that the Anthony Boone Trust owns a home in Tulsa also valued at $1.1 million. Accordingly, the Davis Defendants continue to own substantial property in Tulsa and work in Tulsa, such that their presence in an Oklahoma Court is not inconvenient for the Davis Defendants.

based employee – the mirror image has not yet been established in Texas.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).  Presumably, the underpinnings of the Texas public policy exception for ignoring a choice of law of another state in an employment context would require Texas to recognize the exact opposite – application of Oklahoma law to the exclusion of a Texas contractual choice of law for an Oklahoma citizen/employee – but that has not been resolved by the Texas courts.  Accordingly, this Court should enforce well established Oklahoma law regarding non-compete clauses when construing the subject Agreement.

WHEREFORE the Plaintiffs respectfully request that this Court deny Prosperity Defendants' Motion to Transfer Venue.

Respectfully submitted,

s/ George S. Corbyn, Jr.
George S. Corbyn, Jr., OBA No. 1910
Joe M. Hampton, OBA No. 11851
Amy J. Pierce, OBA No. 17980
CORBYN HAMPTON, PLLC
211 North Robinson, Suite 1910
Oklahoma City, Oklahoma  73102
Telephone:    (405) 239-7055
Facsimile:    (405) 702-4348
gcorbyn@corbynhampton.com
jhampton@corbynhampton.com
apierce@corbynhampton.com

**ATTORNEYS FOR PLAINTIFFS**
**CHRIS CARDONI, WESLEY WEBB,**
**TERRY BLAIN and BILLY SHAFFER**

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2014, a true and correct copy of the foregoing document was served via ECF to the following attorneys of record:

| | |
|---|---|
| Amy J. Pierce<br>apierce@corbynhampton.com | Jay R. Aldis<br>jay.aldis@bgllp.com |
| Bryan S. Dumesnil<br>bryan.dumesnil@bgllp | Jessica L. Freedson<br>jessica.freedson@bgllp.com |
| George S. Corbyn, Jr.<br>gcorbyn@corbynhampton.com | Joe M. Hampton<br>jhampton@corbynhampton.com |
| J. Schaad Titus<br>stitus@titushillis.com | Orrin Harrison, III<br>oharrison@ghjhlaw.com |
| James A. Jennings, III<br>jaj@jctokc.com | William B. Willis<br>bwillis@jenningsteague.com |

I hereby certify that on June 25, 2014, a true and correct copy of the foregoing document was sent via U.S. First-Class Mail, postage prepaid, to the following attorneys of record:

Nancy R. McEvily
BRACEWELL & GIULIANI LLP
711 Louisiana, Suite 2300
Houston, TX 77002-2781

Robert Harris
GRUBER HURST JOHANSEN HAIL SHANK, LLP
1445 Ross Ave., Suite 2500
Dallas, TX 75202

s/ George S. Corbyn, Jr.
George S. Corbyn, Jr.

25