UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRIS CARDONI, *et al.,* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1946 |
| | § | |
| PROSPERITY BANK, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

MEMORANDUM OPINION & ORDER

Pending before the court are plaintiffs' motion to determine that Oklahoma law applies (Dkt. 61), plaintiffs' motion for partial summary judgment (Dkt. 63) and Prosperity's application for temporary restraining order, preliminary injunction, and permanent injunction (Dkt. 69). After considering the parties' briefing, record evidence, and applicable law, the court is of the opinion that the motion regarding the application of Oklahoma law should be GRANTED in part and DENIED in part; the motion for partial summary judgment should be GRANTED; and the application for temporary restraining order and preliminary injunction should be DENIED.

I. BACKGROUND

A. *Factual Background*

Plaintiffs were employed at F&M Bank and Trust Company ("F&M Bank") in Tulsa, Oklahoma. Dkt. 75, Ex. D, Affidavit of Chris Cardoni ¶4. Prosperity Bank ("Prosperity") entered into an agreement to merge with F&M Bank. *Id.* at Ex. B, Affidavit of Michael Epps ¶3. The merger took effect on April 1, 2014; however, in August 2013, Prosperity offered employment agreements to 35 F&M Bank employees. Dkt. 68, Ex. D, Affidavit of Eric Davis ¶7. The retention of certain high-ranking F&M Bank personnel was crucial to the successful completion of the merger,

and Prosperity maintains that the transfer of F&M Bank's goodwill could not have been accomplished effectively without retention of these employees.  Dkt. 75, Ex. A, Affidavit of Tim Timanus, Jr. ("Timanus Aff.") ¶9.

On or about August 29, 2013, before the completion of the merger, plaintiffs, Chris Cardoni, Wesley Webb, Terry Blain, and Billy Shaffer, each signed an employment agreement ("Agreement") with Prosperity.  Dkt. 61, Ex. A, Affidavit of Chris Cardoni ¶2.  The Agreements were similar in all respects except for the salary and restricted common stock offered to each plaintiff.  *Id.* at Exs. A-1 – A-4.  The Agreements included non-disclosure and non-competition provisions in consideration for a three-year term of employment, access to confidential information, restricted stock, and a signing bonus in the case of Billy Shaffer.  *Id.*

Plaintiffs maintain they were misled about the nature of Prosperity's business, and ultimately, induced into signing unenforceable non-competition agreements.  Dkt. 75, Ex. D, Affidavit of Chris Cardoni.  Specifically, plaintiffs allege that Jeff Pickryl, the former President of F&M Bank and current President of the Tulsa Area for Prosperity, insinuated to Cardoni that plaintiffs could lose their jobs and certain bonuses if they did not sign the Agreements.  *Id.* at ¶¶13-14, 22.  Cardoni also requested that the choice-of-law and forum selection clauses be changed from Texas to Oklahoma, but he was told that the terms were non-negotiable.  *Id.* at ¶¶15, 17.  Plaintiffs also contend that they were told that the non-compete clauses would be unenforceable under Oklahoma law.  *Id.* at ¶15.  Based on these statements, plaintiffs maintain that they were induced into executing the Agreements.  *Id.*  Further, plaintiffs allege that they were misled about Prosperity's policies and its benefits package before signing the Agreements.  *Id.* at ¶¶11, 25, 28.

2

Plaintiffs claim that after Prosperity assumed control of F&M Bank, the business changed and the working conditions began to deteriorate.  Dkt. 78, p. 8.  Additionally, defendants allegedly threatened to sue them and any prospective employers if plaintiffs left Prosperity to work for a competitor.  *Id.* at 9.  Plaintiffs gave notice of their intent to terminate their employment with Prosperity on August 12, 2014, to take effect 30 days later.  *Id.*  The parties agreed to terminate plaintiffs' employment effective August 28, 2014.  *Id.*  Plaintiffs went to work at CrossFirst Bank in Tulsa, Oklahoma on September 2, 2014.

B.       *Procedural Background*

On June 2, 2014, plaintiffs filed a lawsuit against Prosperity, Anthony Davis, CEO of F&M Bank, and Eric Davis, President of F&M Bank's parent company, in Oklahoma state court seeking a declaration that the Agreements were void and unenforceable and asserting claims for tortious interference and false representation.  *Cardoni, et al. v. Prosperity Bank, et al.*, Cause No. CJ-2014-02124, State District Court, Tulsa County, Oklahoma.  Two days later, Prosperity filed a state court action in Texas seeking a declaration that the Agreements were enforceable and asserting a claim for breach of contract against plaintiffs.  *Prosperity Bank v. Cardoni, et al.*, Cause No. H-14-CV-1884, Southern District of Texas, Houston Division, Dkt. 1, Ex. 1.  Both cases were subsequently removed to federal court.  Prosperity moved to transfer venue of the Oklahoma case to the Southern District of Texas on the basis of the forum selection clauses contained within the Agreements.  Dkt. 14.  The Oklahoma district court granted such motion and transferred venue to the Southern District of Texas.  Dkt. 48.  Plaintiffs' original action and Prosperity's lawsuit were consolidated herein on August 5, 2014.  Dkt. 60.

Plaintiffs now move the court to apply Oklahoma law to this case, despite the choice of law provisions in the Agreements selecting Texas as the law applicable to any claims arising thereunder. Plaintiffs maintain that Oklahoma has a greater interest in the outcome of this litigation involving Oklahoma residents doing business in Oklahoma and that the restrictive covenants violate Oklahoma's public policy against broad restraint of trade provisions between employers and employees. Prosperity disagrees that Oklahoma law applies and argues that the plaintiffs should be bound by the Agreements' terms, including the choice-of-law provisions and the restrictive covenants. Further, Prosperity maintains that the non-disclosure and non-competition provisions are enforceable under either Texas or Oklahoma law.

## II. ANALYSIS

### A. Motion to Determine Applicable Law

#### i. Contractual Claims

Before determining whether the covenants contained within the Agreements are enforceable, the court must determine which substantive law applies, Texas or Oklahoma. Plaintiffs urge the court to adopt Oklahoma law as the state with the most significant interest in this case, while defendants maintain that the choice-of-law provision selecting Texas law in the Agreements should control. District courts sitting in diversity apply the choice-of-law rules of the forum state. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Texas determines the enforceability of choice-of-law provisions under the Restatement (Second) Conflict of Laws ("Restatement") § 187. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

4

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,[1] or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT § 187. The enforceability of restrictive covenants is generally not "one which the parties could have resolved by an explicit provision in their agreement." *DeSantis*, 793 S.W.2d at 678 (citing RESTATEMENT § 187, cmt. d). Thus, section 187(1) is inapplicable, and the court must consider section 187(2). *Id.*

Under section 187(2)(b), the parties' contractual choice of Texas law controls unless another state: (1) has a more significant relationship with the parties and the relevant transaction than the state selected in the choice-of-law provision under the Restatement § 188; (2) has a materially greater interest than the chosen state; and (3) has a fundamental policy that would be contravened by the application of the law of the chosen state. *See* RESTATEMENT § 187; *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 705 (5th Cir. 1999). To reject the parties' choice of law, each element of the Restatement's test must be met. *Mary Kay, Inc. v. Woolf*, 146 S.W.3d 813, 816–17 (Tex. App–Dallas 2004, pet. denied).

---

[1] Plaintiffs do not dispute that Prosperity is headquartered in Texas and had a reasonable basis to choose Texas law.

To understand whether a state has a more significant interest than the chosen state, factors relevant to the choice of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. RESTATEMENT § 6. "The contacts to be taken into account in applying the principles of § 6" include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT § 188(2); *Minn. Mining & Mfg. Co. v. Nishika, Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996). These contacts are evaluated by their importance, not their number. RESTATEMENT § 188(3); *Minn. Mining & Mfg.*, 955 S.W.2d at 856.

Here, plaintiffs are residents of Oklahoma, and Prosperity is headquartered in Texas. Plaintiffs signed the employment agreements in Oklahoma, which were then forwarded to Texas for execution by Prosperity. Timanus Aff. ¶12. Thus, the place of contracting was Texas. *See* RESTATEMENT § 188, cmt. e ("the place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect"). Negotiations surrounding the Agreements took place in Oklahoma. Specifically, plaintiffs maintain that certain employees were instructed to come to the Tulsa office in order to receive the proposed Agreements. Dkt. 75, Ex. D, Affidavit of Chris Cardoni ¶7. Thereafter, plaintiffs discussed the terms of the Agreements with senior F&M Bank

officials (now Prosperity employees) in Oklahoma and did not communicate with any Prosperity employee in Texas.  *Id.* at ¶31.

Additionally, plaintiffs performed all of their work for F&M Bank in Oklahoma[2] and the vast majority of their work for Prosperity in Oklahoma.  Dkt. 61, Ex. A, Affidavit of Chris Cardoni ¶¶2, 6.  This factor alone can be conclusive in determining what state's law applies.  *DeSantis*, 793 S.W.2d at 679 (citing RESTATEMENT § 196); *Maxxim Med., Inc. v. Michelson*, 51 F. Supp. 2d 773, 780 (S.D. Tex. 1999), *reversed on other grounds*, 182 F.3d 915 (5th Cir. 1999).  Not only was plaintiffs' actual work performed in Oklahoma, but the Agreements contemplated rendition of services in Oklahoma.  Dkt. 61, Exs. A-1 – A-4, ¶2.2.  Section 2.2 provided: "Location.  Employee shall work in Tulsa, Oklahoma and shall be furnished with an office and other business facilities and services sufficient to carry out his duties of office."  *Id.*  While plaintiffs inherited a few Texas accounts, the vast majority of plaintiffs' customers were persons or businesses located in Oklahoma or states other than Texas.

Prosperity argues that plaintiffs relied on Prosperity's Texas operations in order to perform their jobs.  For instance, every loan over a certain amount had to be sent to Texas for approval by a Loan Committee.  Plaintiffs also utilized Prosperity's computer/software systems, which were based in Texas, to perform their jobs.  However, numerous courts have concluded that the location where an employee performs the majority of his services or work has the most significant relationship to the contract.  *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 750 (S.D. Tex. 2009); *Maxxim Med.*, 51 F. Supp. 2d at 779 (holding that California had a more

_____

[2] Before the merger was finalized, plaintiffs continued work under the Agreements for a period of seven months for F&M Bank.  Dkt. 61, Ex. A, Affidavit of Chris Cardoni ¶2.

significant interest in the litigation involving an employee who lived and worked for his employer in California and who supervised salesmen in many states, including Texas); *DeSantis*, 793 S.W.2d at 679 (holding that where the "gist" of the agreement, including the non-compete, was the performance of services in Texas, the relationship of the parties to Texas was more significant). And, relying on Prosperity's business infrastructure in Texas to perform computer-related or administrative functions does equate to performing work in Texas. *See Joseph Christ Pers. Services, Inc. v. Rossi*, C.A. No. H-03-2341, Southern District of Texas, Houston Division, Dkt. 37 (rejecting choice of law provision selecting Texas because only contacts with Texas were the employer's state of incorporation and access to its databases and support staff in Texas).

Finally, Prosperity's claims surrounding the enforcement of the Agreements involves plaintiffs' employment with a competing bank in Oklahoma.  In analyzing the most significant relationship, it is appropriate to consider the "particular substantive issue to be resolved" in the case. *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 171-72 (Tex. App.–Houston [14th Dist.] 2002, no pet.).  Here, Prosperity seeks to restrict the employment of Oklahoma residents at an Oklahoma bank and protect relationships with clients in Oklahoma.

Thus, the balance of the Restatement factors, in this case, weighs in favor of Oklahoma as the state with the greater interest in the Agreements.  Plaintiffs are residents of Oklahoma.  The place of the negotiation, performance, and subject matter of the employment agreements favors Oklahoma. And, Prosperity seeks to enforce the Agreements in order to prevent plaintiffs' employment at banks in Tulsa, Oklahoma.  Thus, plaintiffs have shown that Oklahoma law has a significant relationship to the transaction and parties in this case.

The next inquiry is whether Oklahoma has a materially greater interest than Texas in deciding whether the restrictive covenants should be enforced. Here, Texas has an interest in enforcing contractual agreements and providing predictability, certainty, and uniformity for an employer headquartered in its state. In contrast, Oklahoma has an interest in determining when a non-competition provision can preclude Oklahoma employees from working for an Oklahoma bank, which competes with their former employer. Oklahoma has expressed its public policy through statutory provisions directed at restricting unreasonably broad or unfair non-competition provisions. *See* OKLA. STAT. tit. 15, §§ 217, 219A. While Texas may have a strong interest in enforcing contracts of Prosperity, this does not outweigh the materially greater interest Oklahoma has in restrictive covenants sought to be applied to its employees doing business in its state. *DeSantis*, 793 S.W.2d at 679 (holding that Texas has a materially greater interest in determining whether the non-compete is enforceable because the litigation involved a Texas resident who planned to start a competing business in Texas). In light of the greater restrictions placed on non-competition provisions in Oklahoma and the particular issues at stake, the court finds that Oklahoma has a materially greater interest than Texas in this dispute.

Finally, the court must determine whether fundamental Oklahoma public policy would be contravened if this court were to apply Texas law. The Restatement only states that a "fundamental" policy is a "substantial" one. RESTATEMENT § 187, cmt. g. The inquiry is not results oriented. In other words, "application of the law of another state is not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law." *DeSantis*, 793 S.W.2d at 680. "[T]he focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law,

despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *Id.*; *Chesapeake Operating*, 94 S.W.3d at 178 (noting that the test is whether the chosen law contravenes a state policy, not the outcome of a particular case.).

The Texas Supreme Court has recognized that most states, including Oklahoma, consider restraints on trade and enforcement of non-competition agreements a matter of fundamental state policy. *DeSantis*, 793 S.W.2d at 680-81 (collecting cases). Likewise, Oklahoma courts have found that where an Oklahoma employee is involved, Oklahoma has a strong interest in the application of its law because of that state's public policy concerning non-competition covenants. *Herchman v. Sun Med., Inc.*, 751 F. Supp. 942, 945 (N.D. Okla. 1990); *Fort Smith Paper Co., Inc. v. Sadler Paper Co.*, 482 F. Supp. 355, 357 (E.D. Okla. 1979). Oklahoma courts also routinely refuse to enforce non-competition provisions of the type presented in this case. *See, e.g., Herchman*, 751 F. Supp. at 945; *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1174-75 (Okla. 1989); *Loewen Group Acquisition Corp. v. Matthews*, 12 P.3d 977, 982 (Okla. Civ. App. 2000).

As discussed in more detail *infra*, Oklahoma's public policy with respect to the non-solicitation and non-competition provisions in the Agreements would be contravened if Texas law prevailed. Under Texas law, non-compete agreements are restricted by the bounds of reasonableness. Specifically, such provisions are enforceable if they are "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE § 15.50. On the other hand, while courts in

Oklahoma still consider the reasonableness of the restraint, they take a more restrictive view regarding covenants that seek to prohibit an employee from engaging in his profession. *See Tatum v. Colonial Life & Acc. Ins. Co. of Am.*, 465 P.2d 448 (Okla. 1970); *Bayly, Martin & Fay*, 780 P.2d 1168. Subject to few exceptions, Oklahoma provides an employee the affirmative right to "engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer," and any such non-compete clause that purports to restrict that right "shall be void and unenforceable." OKLA. STAT. tit. 15, § 217.

Oklahoma also takes a more limited approach in terms of judicial modification of non-competition clauses in order to save them from unenforceability, whereas in Texas, they can be readily modified. *Compare Bayly, Martin & Fay*, 780 P.2d at 1168 (holding "covenants not to compete cannot be modified juridically to conform with the reasonable restrictions of § 217 if essential elements of a contract must be supplied to bring it within the rule of reason") *with* TEX. BUS. & COM. CODE §15.51(c). Thus, if the court were to apply Texas law, Oklahoma's fundamental public policy precluding broad non-competition covenants would be contravened.

In sum, because Oklahoma has the most significant relationship to these parties and Agreements, has a materially greater interest than Texas, and has a developed public policy regarding broad non-competition covenants, this court will apply Oklahoma law to determine the enforceability of the non-competition and non-solicitation provisions in the Agreements between plaintiffs and Prosperity. Oklahoma does not espouse similar public policy concerns with respect to non-disclosure provisions. *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 854 (10th Cir. 1972) (finding non-disclosure provisions are generally proper and enforceable in the absence of

fraud, deception, or other public policy concerns).   Therefore, Texas law will apply to the enforcement of the non-disclosure provisions.

### ii.   *Fraud Claim*

Plaintiffs also bring a claim for fraud based on the alleged misrepresentations made to them regarding the nature of Prosperity's business model, the enforceability of the Agreements under Oklahoma law, and Prosperity's benefits package.[3]   In a diversity action, the court will apply the laws of the forum state to determine which state's law applies.   *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005); *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002).   However, "[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary," and the court will apply the law of the forum state.   *Id.*

Plaintiffs are seeking punitive damages stemming from their fraud claim.   Dkt. 78, p. 13.   A conflict does exist between the laws of Oklahoma and Texas relating to the methods for calculating and capping punitive damages. *Compare* OKLA. STAT. tit. 23, § 9.1 *with* TEX. CIV. PRAC. & REM. CODE § 41.008.   While punitive damages may or may not be awarded, the possibility exists that they could.   Thus, the punitive damages conflict is material to plaintiffs' fraud claim.

Finding a conflict, the court must examine the relationships of Texas and Oklahoma to the occurrences and the parties with regard to the fraud claim asserted against the defendants.   When the

---

[3]  While these motions were pending, plaintiffs were granted leave to amend their complaint.   Dkt. 76.  In their original petition, plaintiffs asserted causes of action for declaratory and injunctive relief, tortious interference with business relations, and fraud against the individual defendants.  Dkt. 2, Ex. A-1.  Plaintiffs have since dropped the tortious interference claim, and plead in their amended complaint causes of action for declaratory and injunctive relief, fraud against each defendant, conspiracy to commit fraud, and violations of the Uniform Securities Act under either Oklahoma or Texas law.  Dkt. 78.  Given the timing of the amendment, the parties have not briefed the conflicts of law issue with respect to plaintiffs' new conspiracy and Uniform Securities Act claims.  Therefore, these issues are not before the court, and it expresses no opinion on the substantive law that should apply to these claims.

Restatement contains rules related to a specific tort claim, the courts must apply the more specific rules over any general provisions. *Grant Thornton L.L.P. v. Suntrust Bank*, 133 S.W.3d 342, 358 (Tex. App.–Dallas 2004, pet. denied). Restatement § 148 applies to fraud and misrepresentation claims. Section 148 provides two methods for selecting the applicable law, each depending on where the action in reliance occurred and where the false representations were made. RESTATEMENT § 148; *see also Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727–28 (5th Cir. 2003). When plaintiff's actions in reliance took place in the same state where the false representations were made and received, the local law of that state applies, unless some other state has a more significant relationship under the principles stated in § 6[4] to the occurrence and the parties.[5] RESTATEMENT §148(1).

---

[4] The factors relevant to the choice of law include:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT § 6.

[5] The court does not apply section 148(2) because plaintiffs have averred that they did not communicate with anyone in Texas regarding these Agreements. Dkt. 75, Ex. D, Affidavit of Chris Cardoni ¶31.

Plaintiffs allege that specific meetings took place in Tulsa, Oklahoma regarding the Agreements, wherein certain allegedly false statements were made to one or more individual plaintiffs in order to induce plaintiffs into signing the Agreements. Plaintiffs signed the Agreements in Oklahoma, and all action taken by plaintiffs in reliance upon the alleged false representations occurred in Oklahoma. In particular, plaintiffs performed the vast majority of services pursuant to the Agreements in Oklahoma. The general factors of Restatement § 6(2) also support the application of Oklahoma law. Specifically, the protection of justified expectations and the certainty, predictability, and uniformity of result weigh in favor of Oklahoma. Because defendants' alleged misrepresentations were aimed at Oklahoma employees conducting business in Oklahoma, they should expect that Oklahoma law would apply. Also, because the choice-of-law provision would not apply to non-contractual claims, the application of Oklahoma law should not come as a surprise to Prosperity. Thus, the court will apply Oklahoma law to plaintiffs' fraud claim.

### B.    Motion for Partial Summary Judgment

Plaintiffs also move for partial summary judgment seeking a declaratory judgment that the non-competition provisions in the Agreements are unenforceable. The court has determined that Oklahoma law should apply to the enforcement of the non-competition provisions in the Agreements in this case. Plaintiffs argue that, under Oklahoma law, the non-competition provisions are an unenforceable and overly broad restraint on their profession. Conversely, Prosperity maintains that the non-competition clauses are valid and enforceable because they are subject to Oklahoma's statutory exception for the sale of goodwill. Prosperity maintains, at a minimum, a fact question exists as to whether the conversion of stock by plaintiffs within the F&M Bank/Prosperity merger constitutes the sale of sufficient goodwill to make the non-competition provisions enforceable.

14

*i.     Legal Standard*

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact.  *Id.* at 322.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).  A dispute is "material" if its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  The substantive law determines the facts which are material in each case.  Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party.  *Id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

*ii.     Non-Competition Clause*

In relevant part, the non-competition clauses contained within the Agreements provide as follows:

6.2    Non-Competition Obligations.    Following the Effective Time, Employer shall provide Employee with Confidential Information relating to Employer's business and specialized training regarding Employer's methodologies and business strategies, which will enable Employee to perform his job for Employer.  Employee also will have immediate access to, or knowledge of, Confidential Information of

15

third parties, such as actual and potential customers, suppliers, partners, join ventures, investor, financial sources, etc., of Employer.   Ancillary to the consideration to be provided pursuant to Section 6.6. hereof, including but not limited to the Bank's and Employer's agreement to provide Confidential Information to Employee and Employee's agreement not to disclose Confidential Information, and in order to protect the Confidential Information, Employee agrees to the non-competition provisions set forth in this Article VI.

6.3    Employee Obligations.    Employee agrees that, for the Non-Competition Period, Employee will not, except as an employee of the Bank or Employer, in any capacity for Employee or others, directly or indirectly:

(a)    compete or engage, anywhere in the geographic area comprised of the fifty (50) mile radius surrounding each of (i) the banking centers of the Bank, (ii) the banking centers of Employer that were formerly banking offices of the Bank or into which banking offices of the Bank were consolidated, and (iii) any other Employer banking center from which the Employee has worked (collectively, the "Market Area"), in a business similar to that of the Bank or Employer, or compete or engage in that type of business which the Bank or Employer has plans to engage in, or any business which the Bank or Employer has engaged in during the preceding twelve (12) month period if within the twenty-four (24) months before the termination of Employee's employment, Employee had access to information regarding the proposed plans or the business in which the Bank or Employer engaged;

(b)    take any action to invest in, own, manage, operate, control, participate in, be employed or engaged by or be connected in any manner with any partnership, corporation or other business or entity engaging in a business similar to that of the Bank or Employer anywhere within the Market Area.  . . .

(c)    call on, service or solicit competing business from customers or prospective customers of the Bank or Employer if, within the twelve (12) months before the termination of Employee's employment with the Bank or Employer, Employee had or made contact with the customer, or had access to information and files about the customer; or

(d)    call on, solicit or induce any employee of the Bank or Employer whom Employee had contact with, knowledge of, or association with in the course of employment with the Bank or Employer to terminate employment from the Bank or Employer, and will not assist any other person or entity in such activities.

Dkt. 61, Exs. A-1 – A-4.  The Non-Competition Period applies from the date of the Agreement

through the date of the third anniversary of the Effective Time. *Id.* at ¶6.4.  The Non-Competition

Period would, therefore, run through April 2017. *Id.*

iii.    *Analysis*

Under Oklahoma law, contracts in restraint of trade are void and unenforceable unless they

fall within three statutorily created exceptions. *Bayly, Martin & Fay*, 780 P.2d at 1170; OKLA. STAT.

tit. 15, § 217 ("Every contract by which any one is restrained from exercising a lawful profession,

trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, . . .

is to that extent void.").  Section 217 prohibits only unreasonable restraints on the exercise of a

lawful profession, trade, or business. *Bayly, Martin & Fay*, 780 P.2d at 1172.

Certain exceptions to this general prohibition have developed over the years.  Specifically,

the exceptions include the sale of goodwill, the dissolution of a partnership, and non-competition

agreements in the context of the termination of an employment relationship.  OKLA. STAT. tit. 15,

§§ 217, 218, 219A; *Eakle v. Grinnell Corp.*, 272 F. Supp. 2d 1304, 1310 (E.D. Okla. 2003).  As this

case does not involve the dissolution of a partnership, the relevant exceptions to be considered are

the sale of goodwill under section 218 and the non-competition provision in section 219A.  Section

218 provides:

> One who sells the goodwill of a business may agree with the buyer to refrain from
> carrying on a similar business within a specified county and any county or counties
> contiguous thereto, or a specified city or town or any part thereof, so long as the
> buyer, or any person deriving title to the goodwill from him carries on a like business
> therein.  Provided, that any such agreement which is otherwise lawful but which
> exceeds the territorial limitations specified by this section may be deemed valid, but
> only within the county comprising the primary place of the conduct of the subject
> business and within any counties contiguous thereto.

OKLA. STAT. tit. 15, § 218.

17

Section 219A, which became effective in 2001, specifically addresses non-competition agreements.  It states:

> A person who makes an agreement with an employer, whether in writing or verbally, not to compete with the employer after the employment relationship has been terminated, shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.

*Id.* § 219A.

As section 217 and its exceptions have been applied in Oklahoma, if the facts raise an issue of the applicability of an exception, then that issue must be decided first; if none of the exceptions applies, then the issue becomes whether the restraint of trade is void and enforceable under section 217.  *Oliver v. Omincare, Inc.*, 103 P.3d 626, 629 (Okla. Civ. App. 2004).  Therefore, the court will first address Prosperity's argument that the non-competition provisions at issue fall within the statutory goodwill exception.

Prosperity argues that plaintiffs, as stockholders and Senior Vice Presidents of F&M Bank, held goodwill in the company which was sold to Prosperity during the merger.  Plaintiffs counter that their minuscule stock ownership does not constitute sufficient goodwill, as a matter of law, to bring the non-competition provisions within the statutory exception.

This exception was first addressed in *Key v. Perkins*, 46 P.2d 530 (Okla. 1935).  In *Key*, the court considered whether a holder of 20% stock in the corporation had a vendible interest in the goodwill of the business such that the non-competition agreement fell within the statutory goodwill exception.  *Id*. at 531.  The court held that the owner of "an appreciable interest" in the stock and assets of the corporation has a "proportionate interest in the good will of the business" such that he

18

would be bound by an agreement not to engage in a similar business within the territorial and time limitations imposed by the statutory exception. *Id.* at 532. The court determined that a 20% interest in the corporation was an appreciable interest and the agreement could be enforced. *Id.*

More recently, the Supreme Court of Oklahoma considered a case involving a less significant stock interest held by an insurance agent. *Bayly, Martin & Fay*, 780 P.2d at 1170. The court held that .8% stock sold back to the employer was "minuscule" and did not constitute the sale of goodwill. *Id.*

Relying on *Oliver*, Prosperity argues that a genuine issue of material fact is presented with regard to whether the sale of goodwill in the stock transaction between plaintiffs and Prosperity was sufficient to bring the non-competition provisions within the purview of the statutory exception. *Oliver*, 103 P.3d 626. In *Oliver*, the court of appeals reversed the trial court, finding that a factual dispute existed as to the employee's precise ownership and goodwill, if any, in the businesses that were sold. *Id.* at 630. The court found the record was insufficient to determine if his interest was "appreciable" or "minuscule," or if he had otherwise developed independent goodwill. *Id.*

The holding in *Oliver*, however, does not compel the conclusion here that a genuine issue of material fact exists in this case. The cases cited in *Oliver* demonstrate that, upon a proper record, the court may find as a matter of law that a stockholder's interest in the goodwill of a business is either "appreciable" or "minuscule" such that the goodwill statutory exception would apply to a non-competition covenant. As previously discussed, 20% was appreciable, while .8% was minuscule. *Key*, 46 P.2d at 532; *Bayly, Martin & Fay*, 780 P.2d at 1170. Here, it is undisputed that all plaintiffs, combined, held .39% of the stocks that were sold or converted to Prosperity shares. Individually, none of the plaintiffs held more than .18% of the stocks. Dkt. 63, Exs. A-D. These amounts, even

in total, are less than the amount determined to be "minuscule" in *Bayly, Martin & Fay*.  To

withstand summary judgment, a genuine factual dispute must exist, i.e. the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454

(5th Cir. 2005).  On this record, there is no genuine issue of material fact that the stock held by

plaintiffs amounted to an appreciable interest such that it would constitute the sale of goodwill.

To the extent that Prosperity relies on *Griffin v. Hunt*, 268 P.2d 874 (Okla. 1954) to argue

that the goodwill exception applies even without any ownership in the assets or stock of the business,

this case is readily distinguishable.  *Griffin* involved the sale of a veterinarian practice, in which the

sole veterinary doctor signed a covenant not to compete upon the sale of the business.  *Id.* at 875.

While he did not own any tangible assets, he represented the entirety of the business's goodwill as

the sole practitioner at the clinic.  *Id.* at 876.  The circumstances of this case are significantly

different than those presented in *Griffin*.

Thus, the evidence fails to show that plaintiffs' stock interest was appreciable or sufficient

to implicate the goodwill exception.  Because the non-competition clause does not fall within the

statutory goodwill exception to the general restraint of trade provision, the court must determine if

the non-competition provisions are otherwise reasonable, or void and unenforceable under section

217.  The court will make this determination in light of the third exception set out in section 219A.

The seminal opinion in Oklahoma related to non-competition provisions was set forth in

*Tatum v. Colonial Life & Acc. Ins. Co. of Am.*, 465 P.2d 448 (Okla. 1970).  In *Tatum*, an insurance

agent entered into a covenant not to compete with his insurance agency for two years after

termination.  *Id.* at 450.  Specifically, the agent was prohibited from selling, or attempting to sell,

20

any form of accident or health insurance to any of the agency's clients, or inducing or attempting to

induce any of the agency's clients to cancel, lapse, or fail to renew their policies with the agency.

*Id.* The Oklahoma Supreme Court found that the agreement did not contravene section 217 because

the contractual provision did not unduly restrain the agent from exercising his profession. *Id.* at 451.

At its core, the non-competition provision only required the agent to maintain a "'hands off' policy

with respect to those whom he [knew were] 'insureds' under then-outstanding [policies] issued by

the plaintiff company." *Id.* Thus, the provision was narrowly circumscribed to prevent only unfair

competition by prohibiting the former employee from using confidential information disclosed to

him and customer relationships developed by him during his employment to compete with his former

employer for a limited period of time after termination of his employment. *Id.*

In 2001, the Oklahoma Legislature created a third exception to section 217 and largely

codified the holding in *Tatum* in Section 219A. Okla. Stat. tit. 15, § 219A; *see also Inergy*

*Propane, L.L.C. v. Lundy*, 219 P.3d 547, 555-56 (Okla. Civ. App. 2008). Section 219A specifically

addresses non-competition agreements. It states:

> A person who makes an agreement with an employer, whether in writing or verbally,
> not to compete with the employer after the employment relationship has been
> terminated, shall be permitted to engage in the same business as that conducted by
> the former employer or in a similar business as that conducted by the former
> employer as long as the former employee does not directly solicit the sale of goods,
> services or a combination of goods and services from the established customers of
> the former employer.

Okla. Stat. tit. 15, § 219A. The Oklahoma Supreme Court recognized that section 219A contains

mandatory language defining the boundaries of non-competition agreements between an employee

and former employer. *Howard v. Nitro-Lift Technologies, L.L.C.*, 273 P.3d 20, 30 (Okla. 2011),

*reversed on other grounds*, 133 S. Ct. 500. Section 219A's strictures, however, do not supplant the

rule of reason analysis considered by Oklahoma courts with respect to covenants not to compete.

*Inergy Propane*, 219 P.3d at 556-57.

Generally speaking, the non-competition provisions at issue prohibit plaintiffs, for a three year period, from directly or indirectly:

> (1) competing or engaging in a business similar to Prosperity anywhere in the Market Area,
>
> (2) competing or engaging in "that type" of business which F&M Bank or Prosperity plans to engage, if within the preceding two years of Employee's termination, Employee had access to information regarding the proposed plans or the business in which they engaged,
>
> (3) being employed in any manner with any business engaging in a business similar to that of Prosperity anywhere within the Market Area,
>
> (4) calling on, servicing or soliciting competing business from customers or prospective customers of Prosperity if, within the preceding year before Employee's termination, Employee had or made contact with the customer, or had access to information and files about the customer, and
>
> (5) calling on, soliciting, or inducing any employee of Prosperity to terminate employment with Prosperity, or assisting any other person or entity in this endeavor.

Under Oklahoma law, these provisions in the Agreements exceed the bounds of the statutory exception, and otherwise, unreasonably restrain fair competition.  Specifically, sub-parts (1) - (3) prohibit plaintiffs from engaging in any business similar to that of Prosperity or any business in which Prosperity may prospectively become engaged.   These terms directly contravene the mandatory language of section 219A, which expressly allows employees to engage in the same or similar business as that of the former employer.   *Howard*, 273 P.3d at 28.  The provisions also prevent plaintiffs from taking jobs in any capacity from a competing business, even one not directly related to Prosperity's current business. *Vanguard Envtl., Inc. v. Curler*, 190 P.3d 1158, 1168 (Okla.

22

Civ. App. 2008) (holding employer cannot prohibit former employee from engaging in activities in which she was not involved while employed.).  Further, the non-competition provisions broadly incorporate prohibitions related not only current customers of Prosperity, but also prospective customers.  Non-competition agreements can only be enforced to the extent they pertain to established customers under section 219A.

Additionally, the Market Area, as defined in the Agreements, is unreasonably broad.  The Market Area includes "the geographic area comprised of the fifty (50) mile radius surrounding each of (i) the banking centers of [F&M Bank], (ii) the banking centers of [Prosperity] that were formerly banking offices of [F&M Bank] or into which banking offices of [F&M Bank] were consolidated, and (iii) any other [Prosperity] banking center from which the Employee has worked."  Dkt. 61, Exs. A-1 – A-4, ¶6.3(a).  As written, the territory could literally cover entire areas of Texas and Oklahoma–areas in which plaintiffs never worked and could not subject Prosperity to any unfair competition.  *Herchman v. Sun Med., Inc.*, 751 F. Supp. 942, 946 (N.D. Okla. 1990).

Prosperity's role as successor to F&M Bank and employer to plaintiffs for only a few months also impacts the court's analysis.  A similar case was presented to an Oklahoma Court of Appeals involving the manager at a funeral home.  *Loewen Group Acquisition Corp. v. Matthews*, 12 P.3d 977 (Okla. Civ. App. 2000).  The funeral home was purchased by LGAC, and plaintiff was asked to enter into an employment agreement with LGAC.  *Id.* at 979.  The covenant restricted the manager from directly or indirectly engaging in any business which was or may have been in the funeral, mortuary, cemetery, burial or funeral or cemetery insurance business, "or any business related to any of the foregoing" within a 15 mile radius of any present chapel location.  *Id.*  The court held the covenant was unreasonable because it was too restrictive to serve the lawful purpose of restraining

fair competition. *Id.* at 982. The court found that reasonable limitations on post-employment competition should be based on the "expertise, contacts, good will and opportunity *that had been gained directly from the employment with employer*." *Id.* The covenant was unreasonable because it prevented the employee from using the considerable experience, contacts, and recognition he had within the community that he had already gained before the successor purchased the funeral home. *Id.* The court also concluded that the geographic restriction was too broad when the manager only worked in one city. *Id.* at 981.

In the same manner, Prosperity is attempting to restrict plaintiffs from engaging in any area of the banking business (or any other areas in which Prosperity might engage) and servicing prospective customers within a territory beyond Tulsa, Oklahoma. The non-competition provisions directly contravene the statutory mandates of the Oklahoma Legislature and unreasonably restrict fair competition.

Thus, under section 217, paragraphs 6.3(a) – (c) of the Agreements are void and unenforceable. Prosperity does not request reformation of the non-competition provisions, however, the court finds that the provisions are not subject to reformation because it would require the court to materially alter the provisions at issue. *Bayly, Martin & Fay*, 780 P.2d at 1175 (forbidding courts from modifying non-competition provisions to bring them within the rule of reason if the provisions require "material judicial alteration and the provision of essential terms").

Finally, the non-solicitation of employees provisions contained within paragraph 6.3(d) of the Agreements also cannot withstand scrutiny to the extent it restricts plaintiffs from discussing employment with any Prosperity employee when contact was not directly or indirectly initiated by plaintiffs. The provision precludes plaintiffs from calling on, soliciting, or inducing any employee

24

of Prosperity to terminate employment with Prosperity, or assisting any other person or entity in this endeavor.  Dkt. 61, Exs. A-1 – A-4, ¶6.3(d).  To the extent that "inducing" includes discussing employment options outside of Prosperity when the employee initiated contact with plaintiff, such prohibition has been determined to be unreasonable under Oklahoma law.  *Howard*, 273 P.3d at 29 (finding provision unreasonable when individuals may "seek employment on their own initiative rather than from any intervention by the employee").

## IV. CONCLUSION

Based on the foregoing, the court concludes that plaintiffs' motion to determine that Oklahoma law governs (Dkt. 61) is GRANTED in part and DENIED in part.  Oklahoma has the most significant relationship to the parties and occurrences in this case and plaintiffs have met their burden showing that Oklahoma law should apply to the non-competition provisions in the Agreements (paragraphs 6.3(a) - (d)) and their fraud claim.  However, because application of Texas law does not contravene Oklahoma public policy with respect to the non-disclosure provisions (paragraph 6.1), Texas law will apply to the enforcement of such provisions.  Additionally, the court finds that the non-competition provisions in the Agreements are void and unenforceable under Oklahoma law.  Therefore, plaintiffs' motion for partial summary judgment (Dkt. 63) is GRANTED.

Prosperity also has an application for temporary restraining order, preliminary injunction, and permanent injunction pending.  Dkt. 69.  The court's ruling significantly alters the legal landscape in this case.  Because Prosperity has briefed the issues under the assumption that Texas law would apply, the application for preliminary injunction is largely inapposite.  Therefore, Prosperity's application for preliminary injunction (Dkt. 69) is DENIED without prejudice to refiling in light of this court's ruling.

It is so **ORDERED**.

Signed at Houston, Texas on October 6, 2014.

_____
Gray H. Miller
United States District Judge