# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHRIS CARDONI, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-14-1946 |
| PROSPERITY BANK, *et al.*, | § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

On November 19, 2014, the court held a hearing on Prosperity Bank's second application for temporary restraining order, preliminary injunction, and permanent injunctive relief (Dkt. 98). At the hearing, the court heard testimony from Tim Timanus, Chairman and Chief Operating Officer of Prosperity Bank, and Chris Cardoni, plaintiff and a former Senior Vice President of Prosperity Bank. The court also received into evidence several exhibits which have been considered for purposes of this ruling. After considering the testimony, exhibits, arguments of counsel, and applicable law, the court is of the opinion that the injunctive relief requested by Prosperity Bank should be DENIED.

This case stems from employment agreements entered into by plaintiffs with Prosperity Bank. The employment agreements contained certain non-solicitation, non-competition, and non-disclosure provisions that Prosperity Bank seeks to enforce. Plaintiffs left the employ of Prosperity Bank to work for its competitor, CrossFirst Bank, in Tulsa, Oklahoma. The court previously ruled that the non-solicitation and non-competition provisions of the employment agreements were unenforceable under Oklahoma law. Now, Prosperity Bank seeks injunctive relief related to the non-disclosure provisions of the agreements. Plaintiffs contend that Prosperity Bank is not entitled to injunctive

relief because it has failed to show that the information provided to plaintiffs was confidential or that plaintiffs used or disclosed the confidential information in an unauthorized manner. Plaintiffs also maintain that Prosperity Bank is only seeking an injunction related to the non-disclosure provisions in order to secure the relief already denied by the court, namely prohibiting plaintiffs from soliciting Prosperity Bank's customers.

### I. LEGAL STANDARD

To obtain an injunction, an applicant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the party whom it seeks to enjoin; and (4) that granting the injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252–53 (5th Cir. 2009). "[O]nly those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Cortes v. City of Houston*, 2007 WL 4376106, at *2 (S.D. Tex. Dec.13, 2007) (quoting *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). An injunction is "an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water Ass'n*, 577 F.3d at 253; *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). The decision to grant or deny injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### II. ANALYSIS

Prosperity Bank seeks an injunction prohibiting plaintiffs from using or disclosing confidential information obtained from Prosperity Bank for the purpose of soliciting Prosperity

Bank's customers.[1] The employment agreements define plaintiffs' non-disclosure obligations as follows:

> 6.1 Non-Disclosure Obligations
>
> (a) "Confidential Information" means and includes the Bank's and Employer's confidential and/or proprietary information and/or trade secrets, including those that have been and/or will be developed or used and that cannot be obtained readily by third parties from outside sources. Confidential Information includes, but is not limited to, the following: information regarding past, current and prospective customers and investors and business affiliates, employees, contractors, and the industry not generally known to the public; strategies, methods, books, records, and documents; technical information concerning products, equipment, services, and processes; procurement procedures, pricing, and pricing techniques; including contact names, services provided, pricing, type and amount of services used, financial data; pricing strategies and price curves; positions; plans or strategies for expansion or acquisitions; budgets; research; financial and sales data; trading methodologies and terms; communications information; evaluations, opinions and interpretations of information and data; marketing and merchandising techniques; electronic databases; models; specifications; computer programs; contracts; bids or proposals; technologies and methods; training methods and processes; organizational structure; personnel information; payments or rates paid to consultants or other service providers; and other such confidential or proprietary information. Employee acknowledges that the Bank's and Employer's respective businesses are highly competitive, that this Confidential Information constitutes a valuable, special and unique asset used by each of the Bank and Employer in its business, and that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Bank and Employer.
>
> (b) The Bank promises and agrees that reasonably soon after the execution of this Agreement by Employee, it shall provide Employee with Confidential Information in a greater quantity and/or expanded nature than that already provided to Employee. In addition, Employer promises and agrees that after the Effective Time, Employer shall provide Employee with immediate access to Confidential Information. Employee acknowledges that (i) the Bank and Employer have devoted substantial time, effort, and resources to develop and compile the Confidential Information; (ii) public disclosure of such Confidential Information would have an

---

[1] Plaintiffs' objection to the specific relief requested by Prosperity Bank regarding the solicitation of Prosperity Bank's customers is also well taken. The court previously ruled that the non-competition and non-solicitation provisions of the employment agreements are unenforceable under Oklahoma law. Dkt. 93. If the court were to grant the relief requested by Prosperity Bank, it would, in effect, overturn this ruling.

adverse effect on the business of the Bank and Employer; (iii) the Bank and Employer would not disclose such information to the Employee, nor would the Bank or Employer employ or continue to employ the Employee without the agreements and covenants set forth in this Article VI; and (iv) the provisions of this Article VI are reasonable and necessary to prevent the improper use or disclosure of Confidential Information.

(c) Employee agrees that Employee will not, at any time during his employment with the Bank or Employer, or after the termination of such employment with the Bank or Employer, for any reason, make any unauthorized disclosure, directly or indirectly, of any Confidential Information of the Bank or Employer, or third parties, or make any use thereof, directly or indirectly, except in working for the Bank or Employer.

Dkt. 61, Ex. A-1. Based on the language of the non-disclosure provisions, in order for Prosperity Bank to prevail on its claims, it must be able to show that plaintiffs were provided with confidential information and that they directly or indirectly made use of or disclosed trade secrets, proprietary, or confidential information.

At the hearing, on behalf of Prosperity, Tim Timanus testified regarding the departure of plaintiffs from Prosperity Bank to work for its competitor, CrossFirst Bank, on September 1, 2014. The plaintiffs represented the entirety of Prosperity Bank's energy lending group in Tulsa, Oklahoma. Following plaintiffs' departures, Timanus testified that Prosperity Bank has lost 12 customers to CrossFirst Bank, involving significant loan amounts.

Timanus also discussed several emails and documents sent to Chris Cardoni or other plaintiffs involving what Timanus characterized as "confidential information." Specifically, several emails discussed the loan details of certain customers with Prosperity Bank, as well as customers' financial data. Additionally, documents delineating Prosperity Bank's energy policy and loan guidelines were identified by Timanus as confidential information of the bank. However, Timanus was unable to identify anything specific within the energy lending policy that could not be shared

4

publicly. Timanus also discussed the steps Prosperity Bank had taken to secure its confidential information, including blocks and filters on its computer system, restricted access files, use of employment agreements, and confidentiality provisions in each employee's handbook.

Plaintiff, Chris Cardoni, disputed that such information was confidential on several grounds. First, he countered that the information Prosperity Bank deemed confidential was not confidential information of Prosperity Bank, but rather confidential information of the customers, who were free to disseminate their information to any other lender or banking institution. Additionally, Cardoni disagreed that the energy policy or loan guidelines were, in fact, confidential because such information was regularly used to market energy loans to potential customers and were generally included in loan documentation provided to customers. Finally, Cardoni asserted that the information was not confidential because it was not adequately protected by Prosperity Bank. For instance, Timanus agreed that several employees, who were not subject to employment agreements, were provided the same sensitive customer financial data as plaintiffs. Many of those employees have since left Prosperity Bank to work for a competitor, yet Prosperity Bank has not pursued its confidential information from those former employees. Also, customers or potential customers are routinely given information about the energy lending policy or loan guidelines and are not asked to enter into a confidentiality agreement. Cardoni also testified that he was provided access to Prosperity Bank's purportedly confidential information before he signed his employment agreement in June 2011.

On the record before the court, Prosperity has arguably shown that the information provided to plaintiffs was confidential. Texas law defines a "trade secret" as a "formula, pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an

advantage over his competitors who do not know or use it." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991); *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 766 (Tex. 1958). To determine whether information is a trade secret protected from disclosure or use, a court must examine six "relevant but nonexclusive" criteria: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to [the company] and to [its] competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004) (citing *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003)); *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.–Houston [1st Dist.] 1998, pet. dism'd). Although the party claiming trade secret status need not satisfy all six factors, it is "the burden of the party claiming secrecy status to prove secrecy." *Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. App.–Houston [14th Dist.] 1994, writ denied).

Here, the information accessible to plaintiffs included private financial data and loan terms specific to individual customers. In Texas, customer lists, pricing information, client information, customer preferences, buyer contacts, and marketing strategies have all been recognized as trade secrets. *Global Water Group, Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App.–Dallas 2008, pet. denied) (citing *T-N-T Motorsports*, 965 S.W.2d at 22); *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1177 (5th Cir. 1983) (finding customer list involving purchasing or other characteristics of customer gathered by company and not known to the general public is considered confidential). While certain information regarding Prosperity's customers could be determined from independent

6

investigation of industry databases, the information contained in the emails presented is not publicly available, was not intended to be disseminated, and was learned by plaintiffs only in their capacity as employees for Prosperity Bank. The information came directly from the customers' relationships with Prosperity Bank. *See Alliantgroup L.P. v. Feingold*, 803 F. Supp. 2d 610, 626 (S.D. Tex. 2011) ("Even if the information is readily available in the industry, it will be protected if the competitor obtained it working for the former employer."). Cardoni acknowledged that he would not be at liberty to disclose private customer financial data publicly. Further, the energy lending and pricing policies reflect internal policies developed by and unique to Prosperity Bank. Despite certain failings in its efforts to adequately protect the confidential information, Prosperity Bank maintained a reasonable system to ensure that confidential information was not made public or shared with its competitors, including restricted access, password-protected computer systems, and a confidentiality clause generally applicable to all its employees. Finally, regardless of whether the information constitutes confidential information under Texas law, the court is satisfied that such information is confidential by the terms of the employment agreements, to which plaintiffs agreed.

Prosperity Bank must also, however, be able to show that plaintiffs made use of or disclosed such information to show a substantial likelihood of success on the merits and irreparable injury. Based on the record before the court, Prosperity Bank has only made a speculative showing that plaintiffs have disclosed or used Prosperity Bank's confidential information. Specifically, Timanus testified that he considered the following as evidence of plaintiffs' use or disclosure of confidential information: (1) plaintiffs' former customers at Prosperity Bank have moved their business to CrossFirst Bank since the time that plaintiffs left Prosperity Bank; (2) plaintiffs are working in the same capacity at CrossFirst Bank as they did at Prosperity Bank; and (3) plaintiff, Billy Schaffer, was

7

seen having lunch with a former customer of Prosperity Bank. The movement of 12 customers from Prosperity Bank to CrossFirst Bank does not necessarily support Prosperity Bank's position that plaintiffs used Prosperity Bank's confidential information to solicit these customers. As acknowledged by Timanus, plaintiffs constituted the entirety of the energy lending group for Prosperity Bank in Tulsa, Oklahoma. It is just as likely that these customers chose to move with their bankers and transition to a bank with an energy lending practice. Cardoni testified that he has never used any of Prosperity Bank's confidential information to solicit Prosperity Bank's customers, and he also denied recommending customers to employees of CrossFirst Bank or making initial contact with any of the departing customers identified by Timanus. There simply is no evidence that plaintiffs used or disclosed any confidential information obtained during their employment at Prosperity Bank to solicit Prosperity Bank's customers in their new positions. In the face of no evidence demonstrating that plaintiffs used or disclosed any confidential information, Prosperity has not shown that plaintiffs breached the non-disclosure agreements or otherwise misappropriated any confidential information or trade secrets. Thus, Prosperity Bank has failed to show a substantial likelihood of success on the merits of its claims or irreparable injury.

Prosperity Bank seeks to rely on the doctrine of inevitable disclosure to show that plaintiffs made use of confidential information and to establish the probability of irreparable injury. Courts have taken different views on the applicability of the inevitable disclosure doctrine in the context of non-disclosure provisions. Generally, "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the injury need not have been inflicted when application is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis." *United States v.*

*Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). To meet this burden, some courts have held that an employee who possesses trade secrets belonging to a former employer and accepts employment with one of its competitors, even if acting in good faith, will have difficulty preventing his knowledge from infiltrating his work. *See FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504–05 (5th Cir. 1982) (citing *Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898, 902 (Tex. Civ. App.–Houston 1978, writ refused n.r.e.)); *Baker Petrolite Corp. v. Spicer*, 2006 WL 1751786, at *9–10 (S.D. Tex. Jun. 20, 2006) (granting injunctive relief when former employee with knowledge of confidential information and trade secrets took similar job working for competitor). However, more recently, Texas courts have declined to apply the inevitable disclosure doctrine when the former employee had not taken confidential information with him or used any such information with his current employer. *M-I, L.L.C. v. Stelly*, 2009 WL 2355498, at * 7 (S.D. Tex. Jul. 30, 2009); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 242 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

Further, when there is no proof of misuse of confidential information, irreparable harm is not presumed. *W.R. Grace & Co. v. Henson*, 2007 WL 2389547, at *3 (Tex. App.–Corpus Christi Aug. 23, 2007, no pet.). The obligation not to use confidential information also does not bar a former employee from using the general knowledge, skill, and experience that the employee acquired during the employment to compete with the employer. *Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 443 (S.D. Tex. 2008); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 425 (Tex. App.–Houston [14th Dist.] 2007, no pet.). Here, there is no reason to infer that plaintiffs would use Prosperity Bank's confidential information because plaintiffs do not have any confidential information in their possession and do not need such information in their current positions given their extensive industry knowledge. *See Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459,

9

469 (5th Cir. 2003) (declining to infer that former employee would probably use the information because he did not take any confidential information with him, other former employees were acting in similar capacities at competitors without using such information, competitor had its own systems in place, and the confidential information was out of date).

Finally, this court has previously refused to apply the inevitable disclosure doctrine when plaintiff failed to show that its former employees took any confidential information with them without authorization or used such information for the benefit of the new employer. *Stelly*, 2009 WL 2355498, at *7. The same failings plague Prosperity Bank in this case. Prosperity Bank has not shown that plaintiffs surreptitiously took confidential information or used or disclosed any confidential information of Prosperity Bank for the benefit of CrossFirst Bank. The inevitable disclosure doctrine is particularly inappropriate in this case for the further reason that Prosperity Bank only seeks to use the non-disclosure provisions to breathe life back into the non-solicitation and non-competition provisions, which this court has already found unenforceable under Oklahoma law. The court will, therefore, not infer that plaintiffs would inevitably use Prosperity Bank's confidential information when Prosperity Bank has failed to establish that plaintiffs have, in fact, taken, used, or disclosed any confidential information.

### III. CONCLUSION

Because Prosperity Bank has failed to show a substantial likelihood of success on the merits or substantial threat of irreparable injury, it has failed to justify the imposition of an injunction in this case. Therefore, Prosperity Bank's second application for temporary restraining order, preliminary injunction, and permanent injunctive relief (Dkt. 98) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on December 23, 2014.

_____
Gray H. Miller
United States District Judge