United States District Court
Southern District of Texas
**ENTERED**
April 03, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRIS CARDONI, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CIVIL ACTION H-14-1946 |
| PROSPERITY BANK, *et al.*, | § § § § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is (1) the plaintiffs' motion for partial summary judgment (Dkt. 165), and (2) the plaintiffs' conditional motion for partial summary judgment regarding damages (Dkt. 166). Having considered the motions, response, reply, evidentiary record, and the applicable law, the court is of the opinion that (1) the plaintiffs' motion for partial summary judgment should be DENIED, and (2) the plaintiffs' conditional motion for partial summary judgment regarding damages should be GRANTED.

**I. BACKGROUND**

**A.    Factual Background**

The plaintiffs, Chris Cardoni, Wesley Webb, Terry Blain, and Billy Shaffer, were employed at F&M Bank and Trust Company ("F&M Bank") in Tulsa, Oklahoma. Dkt. 165. F&M Bank entered into an agreement to merge with defendant Prosperity Bank ("Prosperity"). Dkt. 168, Ex. B. In August 2013, in preparation for the merger, the plaintiffs signed employment agreements with F&M Bank and Prosperity (the "Agreements") (Dkt. 165, Exs. A-1–A-4; Dkt. 168, Ex. E). Dkt. 168, Ex. D. Prosperity claims that the execution of the Agreements was a prerequisite to the merger and

was necessary to effectuate the transfer of customer goodwill from F&M Bank to Prosperity. Dkt. 168 at 9-10, Ex. A. The merger took effect on April 1, 2014. *Id.*

The Agreements included non-disclosure, non-competition, and non-solicitation provisions in exchange for a three-year term of employment post-merger, access to confidential information, and restricted stock.[1] Dkt. 165, Exs. A-1–A-4. Due to a deteriorating relationship between the plaintiffs and Prosperity, the parties agreed to terminate the plaintiffs' employment effective August 28, 2014.[2] Dkt. 168 at 13. On September 2, 2014, the plaintiffs went to work at CrossFirst Bank in Tulsa, Oklahoma. *Id*. Prosperity alleges that the plaintiffs breached the Agreements while working for CrossFirst Bank. *Id*.

**B.     Procedural Background**

This case began with competing lawsuits in Oklahoma and Texas state courts. Dkts. 2, 60. Prosperity sought declaratory judgment on the enforceability of the Agreements in Texas, and the plaintiffs sought judgment declaring the Agreements void in Oklahoma. *Id*. Eventually both cases were removed to federal court, the Oklahoma case was transferred to the Southern District of Texas on the basis of the forum selection clause within the Agreements, and the two cases were consolidated.[3] Dkts. 14, 60.

---

[1] The plaintiffs' separate employment agreements are identical, except that Billy Shaffer also received a signing bonus. Dkt. 165, Exs. A-1–A-4. The court will address the Agreements collectively throughout this opinion.

[2] The details of plaintiffs' employment with F&M Bank and Prosperity are more thoroughly described in the court's previous ruling in this case and incorporated herein. Dkt. 93 at 1–3.

[3] The "flurry of motions" that dominates the procedural history in this case is discussed in further detail in both this court's previous ruling on this case and the Fifth Circuit opinion. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 574 (5th Cir. 2015); Dkt. 93 at 3–4.

Then, the plaintiffs moved for the court to determine whether Oklahoma or Texas law should apply to this case and sought partial summary judgment declaring the Agreements were unenforceable under Oklahoma law. Dkt. 61. Prosperity sought a temporary restraining order and injunction to enforce the Agreements under Texas law. Dkt. 69. The court, performing a conflict of laws analysis, determinated that the Texas choice of law clause was only applicable to the non-disclosure provision of the Agreements, but that Oklahoma law governed the non-compete and non-solicitation provisions. Dkt. 93 (*Cardoni v. Prosperity Bank*, No. CIV.A. H-14-1946, 2014 WL 4982600 (S.D. Tex. 2014)). The court also held that the non-compete and non-solicitation provisions were likely unenforceable under Oklahoma law. *Id*. Because Prosperity did not demonstrate that there was a substantial likelihood of success on just the breach of the non-disclosure provision, its request for injunction was denied. *Id*. Prosperity appealed the decision. The Fifth Circuit affirmed the court's denial of injunctive relief, the applicability of Oklahoma law to the non-compete provision, and the applicability of the Texas choice of law clause to the non-disclosure provision. *Cardoni v. Prosperity Bank*, 805 F.3d 573 (5th Cir. 2015). However, the Fifth Circuit reversed the court's determination that Oklahoma law applied to the non-solicitation provision, and held that Texas law applied under the choice of law clause. *Id*. On the issue of the non-solicitation provision, the Fifth Circuit remanded the case for the district court to decide ". . . with the benefit of the full briefing, whether the agreement is enforceable under Texas law as is, or pursuant to modification . . . ." *Id*. at 589.

The plaintiffs now file a motion for partial summary judgment requesting declaratory relief that the non-solicitation provision in the Agreements is unenforceable and that Prosperity's counterclaims based on the non-solicitation provision fail as a matter of law. Dkt. 165. The plaintiffs also file a conditional motion for partial summary judgment requesting a declaration that

3

the non-solicitation provision requires reformation, which bars damages under Texas law.[4] Dkt. 166. Prosperity responded to both motions and the plaintiffs replied. Dkts. 168, 169. The plaintiffs also filed a supplement to their motion and Prosperity objected. Dkts. 170, 173.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 165)

The plaintiffs have filed a motion for partial summary judgment for declaratory relief that the non-solicitation provision in the Agreements is unenforceable, and thus, Prosperity's counterclaims based on the breach of the non-solicitation provision also fail. Dkt. 165 (citing Exs. A-1–A-4 at § 6.3). Under Texas law, a covenant not to compete is enforceable if (1) "it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made," and (2) "it contains limitations as to time, geographical area, and scope of activity to be restrained that are

---

[4] This motion is conditional because it is only applicable if the court does not grant the plaintiffs' other motion for partial summary judgment (Dkt. 165). Dkt. 166 at 4.

reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.*" Ray Mart Inc. v. Stock Bldg. Supply of Tex. LP*, 302 F. App'x 232, 236 (5th Cir. 2008) (citing Tex. Bus. & Com. Code Ann. § 15.50(a) ("the Act")). The Act's requirements also apply to the enforcement of non-solicitation agreements. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) ("Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act.")

The plaintiffs challenge the non-solicitation provision by arguing that the Agreements were not enforceable "at the time the agreement [was] made." Dkt. 165 at 5 (citing to § 15.50(a)). Further, the plaintiffs make another attempt to challenge the applicability of the Texas choice of law clause to the non-solicitation provision, arguing Texas law was inapplicable at the time the Agreements were executed. Dkt. 165 at 13.

**A.    "At the time the agreement is made"**

The court will review the nature of the Agreements generally before turning to each of the plaintiffs' arguments that the Agreements are unenforceable. The Agreements were made among three parties, each of the plaintiffs, Prosperity, and F&M Bank. Dkt. 165, Exs. A-1–A-4. Under the Agreements, F&M Bank and Prosperity offered consideration in the form of restricted stock, expanded access to confidential information, training, and information regarding Prosperity's customers and other business contacts. *Id*. at § 6.6. Additionally, the Agreements included bonuses, salary, and a three-year employment agreement after the effective date of the merger. *Id*. at § 4. In return, the plaintiffs made non-disclosure, non-compete, and non-solicitation promises. *Id*. at § 6.

"The enforceability of a covenant not to compete is a question of law." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The plaintiffs argue that the

5

Agreements were not enforceable "at the time the agreement [was] made" as required by Texas law because: (1) the *Sheshunoff* concurring opinion treats future promises in agreements as illusory, (2) there was no employer-employee relationship at the time the Agreements were made, (3) the Agreements are non-competitive because the plaintiffs were at-will employees, making their promises illusory, and (4) Prosperity cannot meet its burden of proving that the non-solicitation provision is ancillary. Dkt. 165 (*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 657–63 (Tex. 2006) (Jefferson, C.J., O'Neill, J. Medina, J. concurring)).

*1. The Sheshunoff opinion*

The plaintiffs argue that Prosperity's promises were contingent on the future merger of the banks, making them illusory at the time the Agreements were made, and rendering the Agreements unenforceable at the time. Dkt. 165 at 9–11 (citing *Sheshunoff*, 209 S.W.3d at 657–63 (Jefferson, C.J., O'Neill, J. Medina, J. concurring)). In *Sheshunoff*, the Texas Supreme Court considered the meaning of the phrase "at the time the agreement is made," by clarifying a footnote from a previous opinion. *Sheshunoff*, 209 S.W.3d at 651 (citing *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 645 n.6 (Tex. 1994), *abrogated by Marsh*, 354 S.W.3d 764). The five justice majority held that the phrase "at the time the agreement is made" does not modify "otherwise enforceable agreement," but rather it modifies that the restrictive covenant is "ancillary to or part of." *Id*. In other words, the restrictive covenant must be ancillary to the agreement at the time the agreement is made, however the agreement need not be otherwise enforceable at the time the agreement is made. *Id*. The effect of this clarification is that "a unilateral contract formed when the employer performs a promise that was illusory when [the contract is] made can satisfy the requirements of the Act." *Id.*

The Texas Supreme Court further opined that "whether the promise was illusory at the time it was made is irrelevant; what matters is whether the promise became enforceable by the time of the

breach." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 303 (Tex. 2009) (citing *Sheshunoff*, 209 S.W.3d at 651).

Contrary to *Sheshunoff* opinion, the plaintiffs argue that some of Prosperity's promised performance did not occur until after the merger, making its promises illusory only. Dkt. 165 at 6 (quoting *Sheshunoff,* 209 S.W.3d at 657–63) (arguing the seven month delay allowed the promises to "hang in the air," making the Agreements unenforceable under the concurrence in *Sheshunoff*). Further, the plaintiffs argue that the Texas Supreme Court requires that the employer's performance cannot come months or years later to make it an otherwise enforceable agreement. Dkt. 165 at 11 (citing to *Light*, 883 S.W.2d at 644). The court disagrees with this argument for two reasons: (1) the plaintiffs' arguments are contrary to the precedent established by *Sheshunoff*, and (2) F&M Bank and Prosperity did offer the plaintiffs consideration prior to the merger.

First, the majority in *Sheshunoff* clearly held that illusory future promises do not render restrictive covenants unenforceable, because when performance is eventually tendered, the promises become non-illusory. *Sheshunoff*, 209 S.W.3d at 651, 655 (expressly modifying its dicta in *Light* and stating "an at-will employee's non-compete covenant becomes enforceable when the employer performs the promises it made in exchange for the covenant" and "we disagree with [*Light*] insofar as it precludes a unilateral contract made enforceable by performance from ever complying with the Act because it was not enforceable at the time it was made"). The court is bound by the *Sheshunoff* majority's interpretation of Texas law, not the concurrence. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938). Prosperity offered evidence that both it and F&M Bank performed as required under the Agreements. Dkt. 168 at Exs. A–D. The performance of Prosperity and F&M Bank's rendered any future illusory promises non-illusory when they actually performed, making the Agreements enforceable prior to the plaintiffs' alleged breach of the non-solicitation provision.

7

Second, to the extent that the plaintiffs insist that performance must be contemporary or near-contemporary to the time the Agreements were entered into, F&M Bank proffered performance in the form of access to Prosperity's confidential business information. Dkt. 169 at 15–16; *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 753 (S.D. Tex. 2009) (holding that "one non-illusory promise may establish consideration for the agreement") (citing to *Curtis v. Ziff Energy*, 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999)). The plaintiffs argue that Prosperity had no obligation to the plaintiffs until the merger closed seven months later. Dkt. 165 at 11 (citing to Ex. A-1–A-4 at § 6.6(a), (c)). However, this selective interpretation of the Agreements ignores the provision that as "reasonably soon after the execution of this Agreement" F&M Bank promised to provide access to greater quality and expanded confidential information. *Id*., Exs. A-1–A-4 at § 6.6(b).

The plaintiffs also contend that F&M Bank did not provide any greater or new confidential information in performance of this promise. Dkt. 165 at 8, Ex. B at 6. However, Prosperity offers evidence that F&M Bank did provide the plaintiffs confidential information belonging to both F&M Bank and Prosperity after the execution of the Agreements. *See, e.g.*, Dkt. 168, Ex. D (describing information such as "lending preferences, methods, and processes for both F&M Bank and Prosperity Bank, . . . technical information and training on Prosperity Bank's computer software and programs, [etc.]"). Viewing the evidence in the light most favorable to Prosperity, the non-moving party, the evidence at least establishes that there is a dispute of material fact on whether confidential information was provided to the plaintiffs between their signing of the Agreements and the merger.

The court recognizes that the provision obligating F&M Bank to provide the plaintiffs with confidential information after the execution of the Agreements and prior to the merger does not constitute an express promise from Prosperity, but it does constitute an implied promise. Dkt. 165,

8

Exs. A-1–A-4 at § 6.6(b). "In the case of an implied contract . . . mutual assent is inferred from the circumstances." *Mann Frankfort,* 289 S.W.3d at 850. Here, all parties acknowledged part of the purpose of the Agreements was to share Prosperity's confidential information with the plaintiffs to assist with preparation for the merger. *See, e.g.*, Dkt. 165, Exs. A-1–A-4; Dkt. 168, Ex. D. Even though the explicit provision of the Agreements regarding confidential information requires only F&M Bank's performance, the court concludes that it can be reasonably inferred from the circumstances that Prosperity also performed by providing confidential information prior to the merger.

    *2. The employer-employee relationship*

Second, the plaintiffs argue that Prosperity was not their employer at the time the Agreements were made, and that existing Texas precedent only addresses the enforceability of restrictive covenants in the context of existing employer-employee relationships. Dkt. 165 at 14–15. However, this argument ignores the fact that F&M Bank, the plaintiffs' employer, was also a party to the Agreements. Dkt. 165, Exs. A-1–A-4; Dkt. 168 at 16. Later, when the two organizations merged, Prosperity succeeded F&M Bank as the plaintiffs' employer. The court concludes that the participation of F&M Bank in the Agreements make this a valid contract in an existing employer-employee relationship.

    *3. At-will employment*

Third, the plaintiffs argue that the Agreements were non-competitive because they immediately bound the plaintiffs, who were at-will employees who did not receive benefits from their employer until after the merger. Dkt. 165 at 16. The plaintiffs argue that F&M Bank could have terminated the plaintiffs' employment prior to the merger while still binding them to the restrictive covenants. *Id*. (citing to Exs. A-1–A-4, § 6.3(c)). The plaintiffs argued this unfairly

restrained them from competition prior to Prosperity performing under the Agreements. Dkt. 165 at 16.

Though the plaintiffs' argument may raise an issue if the employee is terminated prior to the employer's performance, once the employer performs its promise it forms an enforceable contract. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 434 (S.D. Tex. 2008) (citing *Sheshunoff,* 209 S.W.3d at 655) (holding that a non-competition agreement is enforceable in an at-will employment case once the employer performs his or her promise). The court agrees that if the plaintiffs breached the restrictive covenants prior to their employers' performance, the analysis may yield a different outcome regarding whether the Agreements were enforceable. Dkt. 168 at 19. However, the court must rule on what actually happened and not on what might have happened. *See Vanegas*, 302 S.W.3d at 303 (holding that the applicable inquiry is whether the contract was enforceable at the time of the breach). Here, Prosperity contends that F&M Bank immediately began fulfilling its promise to the plaintiffs by providing them access to Prosperity's confidential information, the plaintiffs' employment was not terminated, and, after the merger, Prosperity continued to fulfill the rest of its performance obligations. Dkt. 168 at 18–19. All of this occurred prior to the plaintiffs' alleged breach of the non-solicitation provision. *Id*. The court concludes that the plaintiffs were not inequitably bound by the Agreements until F&M Bank and Prosperity began their performance, so the Agreements remain enforceable.

  *4. Ancillary to an enforceable agreement*

Fourth, the plaintiffs argue that Prosperity cannot meet its burden to show the non-solicitation provision was ancillary to an otherwise enforceable agreement. Dkt. 165 at 17–18. Most of this argument hinges on the plaintiffs' previous arguments about the "at the time the agreement [was] made" requirement, which the court has already addressed. *Id*. However, the plaintiffs also argue

10

that any obligation the plaintiffs had to Prosperity was also illusory because they could have discontinued employment with F&M Bank prior to the merger, without ever becoming an employee of Prosperity. *Id.*, Ex. B. The court's earlier analysis regarding illusory promises is applicable here: the plaintiffs' performance under the Agreements was not illusory because (1) they began performance with respect to their employer F&M Bank at the time they entered into the Agreement, and (2) they did not discontinue their employment, but rather began performance with respect to Prosperity after the merger, rendering any future illusory promises non-illusory at that time they tendered performance. *See supra* Part III.A.1–2..

The Texas Supreme Court has clarified that a covenant is "ancillary to or part of" an agreement at the time the agreement was made if there is a nexus or relationship between an interest worthy of protection and the covenant. *Marsh*, 354 S.W.3d at 776 (citing *Mann Frankfort*, 289 S.W.3d at 849). Here, the Agreements seek to protect Prosperity's confidential information and customer relationships. Dkt. 165, Exs. A-1–A-4. The information was offered by Prosperity in exchange for the plaintiffs' promise to not solicit any Prosperity customer with whom they worked with in the course of their employment. *Id*. The court finds this is a valid exchange of promises related to an interest worthy of protection. *Id.*; *see, e.g., Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 566 (S.D. Tex. 2014) (citing *Sheshunoff*, 209 S.W. 3d at 646).

The Texas Supreme Court cautions against getting into "overly technical disputes . . . over whether a covenant is ancillary to an otherwise enforceable agreement." *Sheshunoff*, 209 S.W.3d at 655–56 (instructing courts that the core inquiry should be about whether the restraint on competition is reasonable). F&M Bank, Prosperity, and the plaintiffs all tendered consideration and performance under the Agreements prior to the plaintiffs' alleged breach, and therefore any illusory promises by any party became non-illusory by the parties' performances prior to any alleged

11

breaches. The court concludes that the Agreements were "otherwise enforceable agreements," and the non-solicitation provision is ancillary to the Agreements.

**B.      Texas Choice of Law**

The plaintiffs again challenge the applicability of the Texas choice of law clause in the Agreements. Dkt. 165 at 9. Specifically, they argue that the Texas choice of law clause is a "springing" provision that was not enforceable at the time the Agreements were made, but only enforceable after the occurrence an event—the merger. *Id*. The court has already addressed the enforceability of the Agreements under *Sheshunoff,* concluding the Agreements became enforceable at the time Prosperity and F&M Bank tendered their performance. *See supra* Part III.A.1–2. Just because some provisions in a contract are contingent on a future event, or are an illusory future promise, does not invalidate the entirety of the Agreements as long as performance is eventually tendered. *Mann Frankfort*, 289 S.W.3d at 858.

The "Governing Law" section in the Agreements states that they "shall be governed by the laws of the State of Texas." *Id*., Exs. A-1–A-4 at § 9.3. This language has no contingent provision or any future tense verbiage that indicates that it is only applicable on the effective date of the merger. *Id*. The Agreements themselves have several provisions that take effect immediately. *Id.* For example, the Agreements have obligations commencing "while this Agreement is in effect," that begin "with the execution of the Agreement," or "apply from the date of this Agreement." *See, e.g.*, *id*., Exs. A-1–A-4 at §§ 6.1, 6.4, 6.6(b), 6.7, 7.1, 7.2. Therefore, the court concludes the Texas choice of law clause is not a "springing" provision that only becomes applicable at some indefinite time in the future, as the plaintiffs argue. Dkt. 165 at 9.

The plaintiffs also filed a supplemental brief, attaching an Oklahoma state law case between Prosperity and CrossFirst, where CrossFirst sought declaratory judgment to invalidate the non-

solicitation provision in the Agreements. Dkt. 170. The Oklahoma state district court issued a ruling contrary to the Fifth Circuit decision, determining that the non-solicitation provision undermines a fundamental Oklahoma public policy interest, and therefore, the Oklahoma court invalidated the Texas choice of law clause. Dkt. 170, Ex. A at 9. Both the Fifth Circuit and Oklahoma court's contrary decisions were based on their divergent conclusions on whether enforcing the non-solicitation provision contravenes a fundamental public policy objective of Oklahoma under the analysis required by Section 187(2) of the Restatement (Second) of the Conflict of Laws. *Id*.

Here, the court remains bound by Fifth Circuit precedent in its determination that the non-solicitation provision does not conflict with a fundamental public policy objective of Oklahoma, making the Texas choice of law clause applicable. *Cardoni*, 805 F.3d at 586. The court need not readdress the plaintiffs' arguments regarding the relationship between the parties and Texas, even if that relationship mainly exists because of Prosperity's involvement in the Agreements and the bulk of Prosperity's obligations did not arise until seven months after the execution of the Agreements. Dkt. 165 at 13. The Fifth Circuit was explicit in remanding the decision to this court to determine the enforceability of the non-solicitation provision "under Texas law" *Cardoni*, 805 F.3d at 589. The court will follow the Fifth Circuit's direction to apply Texas law to the non-solicitation provision as instructed by their holding in this case. *Id*.

Because the non-solicitation provision is ancillary to an otherwise enforceable agreement as required by Texas law and the Texas choice of law clause is applicable, the plaintiffs' motion for partial summary judgment for a declaration that the non-solicitation provision is unenforceable is DENIED.

**C.     Prosperity's Counterclaims**

The plaintiffs also move for partial summary judgment on Prosperity's counterclaims for

declaratory relief, breach of contract, and misappropriation. Dkt. 165 at 19–20. The plaintiffs argue these counterclaims fail as a matter of law if the court finds the non-solicitation provision is unenforceable. *Id*. However, the court has determined that the non-solicitation provision is enforceable. Therefore, the plaintiffs' motion for partial summary judgment on Prosperity's counterclaims is DENIED.

### IV. PLAINTIFFS' CONDITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 166)

The plaintiffs also filed a conditional partial motion for summary judgment requesting a declaration that any damages for the breach of the non-solicitation provision are barred because the provision must be reformed. Dkt. 166. The Texas Business and Commerce Code states that "the court may not award the promisee damages for a breach of the [restrictive] covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief." § 15.51(c); *see, e.g.*, *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 621 (S.D. Tex. 2011) (holding that a court may not award damages for a breach prior to a reformation); *Safeworks, LLC v. Max Access, Inc.*, No. H-08-2860, 2009 WL 959969, at *5 (S.D. Tex. 2009) (holding that "[if] a court reforms a covenant not to compete in order to make it reasonable and enforceable . . . the relief granted to the promisee shall be limited to injunctive relief"); *Butler v. Arrow Mirror & Glass*, Inc., 51 S.W.3d 787, 796 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding that "once the trial judge reformed the covenant, money damages were precluded.").

A restrictive covenant is enforceable ". . . to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50. If the limitations in the restrictive covenant are not reasonable, "the court shall reform the covenant to the extent necessary to cause the limitations

14

contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary . . . ." § 15.51(c).

The non-solicitation clause of the Agreements states that plaintiffs may not:

> [Call] on, service, or solicit competing business from customers or prospective customers of the Bank or Employer if, within twelve (12) months before the termination of Employee's employment with Bank or Employer, Employee had or made contact with the customer or had access to information and files about the customer.

Dkt. 168, Ex. E at § 6.3.

The plaintiffs argue that the non-solicitation provision needs to be reformed for several reasons: (1) the court has already held the non-competition covenants are invalid and must be deleted from the Agreements, reforming them completely, and (2) the terms "service" and "had access" in the non-solicitation provision are unreasonable in scope and require reformation. Dkt. 166.

First, the court will address the term "service." In construing a contract, the primary inquiry is to ascertain the parties' intentions. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *Choker v. Choker*, 650 S.W.2d 391, 393 (Tex. 1983). Contract terms are given their "plain, ordinary, and generally accepted meanings" unless the contract shows them to be used in a technical sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

The plaintiffs argue that the term "service" refers to "all aspects of work done on behalf of a customer or client, including handling account issues, coordinating account information, and responding to calls." Dkt. 166 at 8. Prosperity offers that "service" is a synonym for "accept business." Dkt. 168 at 27. To further clarify the definition of service, the plaintiffs offer a hypothetical case where they accept business or "service" a former Prosperity customer that changes

15

banks of his or her own accord, without being solicited, or may already be a customer of both banks. *Id.* at 8–9. Either definition means that the bar on "servicing" effectively prevents the plaintiffs from doing any work related to an account of a Prosperity customer. Dkt. 166 at 8.

Prosperity counters that it needed to add additional language to the non-solicitation provisions to prevent "wrongful behavior to get around 'solicitation' wording," such as utilizing others to make indirect contacts. Dkt. 168 at 26. The court appreciates the need to broaden the word "solicit" to encompass other, related forms of solicitation. However, the plain language meaning of "solicit" involves an active behavior of contacting customers either directly or indirectly, such as approaching, propositioning, calling, or enticing another. Whereas, "service," under both the plaintiffs' and Prosperity's proposed definitions, goes beyond an active behavior, and can involve the passive business of just performing a trade.

Therefore, the court looks to whether broadening the scope of the non-solicitation provision to include servicing is reasonable in this case. As Prosperity points out, courts have held that the term "service" is reasonable in other restrictive covenants and courts have issued injunctions based on that word. Dkt. 168, Ex. M. The plaintiffs argue that barring the plaintiffs from "servicing" Prosperity's customers is not a restriction on solicitation, but it is a restriction on them exercising their trade in competition with Prosperity. Dkt. 166 at 8–9. The court observes that Prosperity's example cases are distinct from this one—in those cases, there is also a valid non-compete agreement. Dkt. 168, Ex. M.

The court concludes that language barring service might be entirely reasonable in an agreement with a valid non-compete provision. Dkt. 168, Ex. M. But, here, the court has invalidated the non-compete provision as likely contrary to Oklahoma law, leaving only the non-solicitation provision. Dkt. 93. A bar on servicing customers goes beyond the active act of

16

soliciting, but it is a restraint on any competition by the plaintiffs with respect to Prosperity's existing customers. Therefore, under the facts of this case, with an invalid non-compete provision, the court concludes that expanding the scope of a non-solicitation provision to include servicing is an unreasonable restraint on competition. That means the non-solicitation provision requires reformation to limit it to just restraining solicitation.

Because the court has determined the non-solicitation provision requires reformation to remove the restriction on "service," damages are barred for any breach prior to reformation of the provision, leaving only injunctive relief as a remedy. § 15.51(c). Because the motion only requested a determination about whether damages are barred due to the need to reform the non-solicitation provision, the court need not inquire further into the plaintiffs' other arguments for reformation. The plaintiffs' conditional motion for partial summary judgment that recovery of damages is barred for the non-solicitation provision is GRANTED because reformation of the non-solicitation provision is required.

## V. Conclusion

The plaintiffs' motion for partial summary judgment that the non-solicitation provision is unenforceable and that Prosperity's counterclaims under the non-solicitation provision fail as a matter of law (Dkt. 165) is DENIED.

The plaintiffs' conditional motion for partial summary judgment that Prosperity is barred from recovering damages for any breach of the non-solicitation provision (Dkt. 166) is GRANTED.

Signed at Houston, Texas on March 31, 2017.

_____
Gray H. Miller
United States District Judge

17